UNITED STATES, Petitioner,

v.

M. C. WHOLLEY, 026 34 1101, Lieutenant
Colonel U. S. Marine Corps Special
Court-Martial Judge, Respondent.

Miscellaneous Docket No. 82–01.

U. S. Navy-Marine Corps Court of
Military Review.

19 March 1982.

LCDR David S. Durbin, JAGC, USNR, Appellate Defense Counsel.

MAJ Charles Wm. Dorman, USMC, Appellate Government Counsel.

MAY, Judge:

This case is before us as a result of a Government petition for extraordinary relief to reverse the order of the respondent military judge in this case who dismissed the charges against the accused following the granting of a motion to dismiss for lack of speedy trial.

A brief synopsis of the factual background of the case is in order. On or about 4 June 1981, certain criminal activity allegedly took place aboard Marine Corps Base, Camp Butler, Okinawa, Japan, involving, in part, a conspiracy to commit larceny, as well as the ultimate larceny of a .45 caliber pistol, rounds, and magazines, and the unlawful reception of such stolen property. The following chronology was presented at an Article 39(a), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 839(a), session of this case:

Day 0—Friday, 5 June 1981, a subsequently alleged co-accused implicated the accused in a statement to Naval Investigative Service (NIS) agents.

Day 0—Friday, 5 June 1981, the accused was ordered into confinement.

Day 4—Tuesday, 9 June 1981, a magistrate's hearing was held. Present at the hearing were the accused, the company commander, B Company, accused's immediate commanding officer, and the magistrate. The magistrate recommended continued confinement of accused.

Day 19—Wednesday, 24 June 1981, interim NIS report forwarded to parent unit of accused, Headquarters and Service Battalion, Marine Corps Base, Camp Butler.

Day 24—Monday, 29 June 1981, Commanding Officer, Headquarters Battalion, forwarded NIS report to Commanding Officer, B Company, accused's immediate unit.

Day 25—Tuesday, 30 June 1981, Commanding Officer, Headquarters and Service Battalion, forwards request for continued confinement of accused in excess of 30 days to Commanding General, Marine Corps Base, Camp Butler.

Day 27—Thursday, 2 July 1981, alleged co-suspect, PFC M, commences unauthorized absence.

Day 31—Monday, 6 July 1981, Legal Services Support Branch, Camp Foster, Okinawa, receives written request for legal processing of charges alleged against accused from Commanding Officer, B Company.

Day 35—Friday, 10 July 1981, Commanding General, Marine Corps Base, Camp Butler, Okinawa, approves confinement of accused in excess of 30 days.

Day 48—Thursday, 23 July 1981, sworn charges preferred against accused.

Day 49—Friday, 24 July 1981, Charge Sheet containing sworn charges received by Commanding Officer, Headquarters and Service Battalion, the special court-martial convening authority over accused.

Day 49—Friday, 24 July 1981, accused informed of preferred charges.

Day 49—Friday, 24 July 1981, Commanding Officer, Headquarters and Service Battalion, signs Article 32, Uniform Code of Military Justice (UCMJ), investigation appointing order.

Day 55—Thursday, 30 July 1981, appointed defense counsel detailed to represent accused. All witnesses placed on legal hold.

Day 64—Saturday, 8 August 1981, accused released from pretrial confinement; placed on restriction.

Day 66—Monday, 10 August 1981, accused removed from restriction status.

Day 66—Monday, 10 August 1981, accused makes written demand for speedy trial.

Day 67—Tuesday, 11 August 1981, convening authority (Commanding Officer, Headquarters and Service Battalion) responds in writing to detailed defense counsel advising that the trial of the alleged co-suspect is intended to precede that of accused dependent upon referral decision subsequent to Article 32 investigation.

Day 73—Monday, 17 August 1981, accused's case docketed for trial on Tuesday, 25 August 1981.

Day 75—Wednesday, 19 August 1981, convening authority refers charges to trial by special court-martial.

Day 81—Tuesday, 25 August 1981, court convened.

(80th Day. *United States v. Manalo*, 1 M.J. 452 (C.M.A.1976)).

At the initial Article 39(a) session of this case on 25 August 1981, counsel for the accused moved for a dismissal of the charges due to lack of speedy trial. Following argument, presentation of evidence and briefs by counsel for the Government and the accused, the military judge granted the motion on 26 August 1981, and dismissed all charges. The military judge, in ruling on the motion, acknowledged that there was not a presumption of prejudice. *United States v. Burton*, 21 U.S.C.M.A. 112, 44 C.M.R. 166 (1971). The military judge then stated that he believed the Government had met its burden of showing reasonable diligence in response to the accused's demand for speedy trial on 10 August 1981.

The judge then observed that the Government had the burden, in a speedy trial motion, of showing that it has acted with reasonable diligence to get the case to trial following confinement of an accused member of the armed forces. The judge then recounted his assessment of the evidence presented, citing those factors which he viewed apparently as salient to the speedy trial issue:

1. No counsel being provided the accused until the 55th day of confinement;

2. The 19-day period between date accused was implicated by co-suspect on 5 June and 24 June, the date the interim NIS report was forwarded to Headquarters and Service Battalion, the convening authority over the accused. The judge cited the lack of explanation for this delay;

3. The 13-day period between 24 June, the date the battalion headquarters received the interim NIS report, and 6 July, the date the Legal Services Support Office received a request for legal services processing from B Company, Headquarters and Service Battalion, the immediate parent unit of the accused. The judge cited the lack of explanation for this delay;

4. The failure of the unit to obtain approval for continued confinement of the accused beyond 30 days, until 10 July, the 35th day of confinement;

5. The time period between 24 June, the date the interim NIS report was forwarded to battalion headquarters, and 23 and 24 July, the dates charges were preferred and the accused informed of the charges;

6. The lack of an 8-day letter ( *United States v. Nelson*, 5 M.J. 189, 190, n.2 (C.M.A.1978)) in compliance with Article 33, UCMJ, 10 U.S.C. § 833;

7. The 7-day period between 23 July, date charges were preferred, and 30 July, date detailed defense counsel appointed.

The trial judge then made the following finding:

From the time which charges are preferred, a period of seven days elapsed before defense counsel is appointed for the accused. At this point he has been in pretrial confinement for 56 days. The testimony and evidence presented by the government concerning how this case was handled, specifically, how detailing counsel was handled, does not indicate to the court's satisfaction reasonable diligence. In short, while I do not believe that the lack of counsel being detailed for 55 days alone may have been sufficient under the totality of the circumstances of this case, I find that the government has not met its burden of showing it has proceeded in bringing these charges to trial with reasonable diligence. Accordingly, defense counsel's motion for dismissal of the charges is granted.

Subsequent to this ruling by the trial judge, the convening authority, after reviewing the record of trial and considering written comments by trial and defense counsel (Appellate Exhibit XIII), returned the record of trial to the military judge for reconsideration of his ruling (Appellate Exhibit XII). Article 62(a), UCMJ, 10 U.S.C.A. § 862(a).

On 16 October 1981, the court was reconvened and the military judge announced that after considering the convening authority's request for reconsideration, he adhered to his previous ruling. The trial judge then directed that a memorandum of decision be appended to the record of trial, expressing at that time a belief that there existed some misunderstanding by the parties of the basis of his prior ruling.

In that memorandum of decision, respondent military judge stated the following views which apparently were determinative of his dismissal ruling:

1. Government has the burden for accounting for the time which it took to bring the accused to trial (underlined in memorandum).

2. Government did not, therefore, in respondent's view, reasonably explain:

(a) The 19-day period between date NIS agents obtained a confession from co-accused (5 June), and the date interim report forwarded to Headquarters and Service Battalion headquarters (24 June).

(b) The 12-day period which elapsed between the date the battalion headquarters received the report (24 June) until a written request for legal services processing of the suspected offenses was forwarded from the immediate parent unit of the accused, B Company, to the Legal Services Support Office (6 July).

(c) The period of 50 days between date of confinement of the accused (5 June) and the date sworn charges were preferred on the Charge Sheet (23 July).

3. The delay of 55 days between date accused ordered into confinement (5 June) and the date defense counsel appointed (30 July).

4. Failure of the Government to comply with the provisions of Article 33, UCMJ, following the appointing of an Article 32, UCMJ, investigating officer on 24 July.

5. Failure of the government to inform the accused of the specific charges against him until 19 August.

(Memorandum, 3–4).

The assessment of the above asserted deficiencies by the respondent are contained in his memorandum of decision:

In a defense motion to dismiss for lack of speedy trial, prejudice to the accused need not be demonstrated by the defense, but if prejudice is shown, then reasonable delays may become unreasonable. The government's argument that [the accused] suffered no prejudice, even if true, again misses the point; the government had the burden of explaining the delays, however short they may have been.

(Memorandum, 4; footnotes omitted).

In conclusion, the delays in this case may well have been reasonable. It was

the government's burden to demonstrate, by evidence on the record, that the delays were not unreasonable or oppressive. The government presented no evidence with respect to any processing delays except on the issue of counsel, and by their failure to present evidence, they failed to carry their burden. Accordingly, this court has no remedy available other than to order the charges dismissed for the reasons stated in the original proceedings. The evidence of record has not changed since 26 August 1981. The decision of this court announced at that time is believed to be correct as a matter of law based on the evidence of record. Under the "totality of the circumstances", the government has not prevailed in carrying its burden. Accordingly, upon reconsideration, this court's decision remains as announced. The charges against this accused are ordered dismissed.

(Memorandum, 5; footnotes omitted).

### The Extraordinary Writ and Discretionary Decisions of the Trial Judge

This Court has supervisory powers over the trial judges of the naval service under the All Writs Act, 28 U.S.C. § 1651. *Dettinger v. United States,* 7 M.J. 216 (C.M. A.1979). That the Government as well as the accused has access to the writ was one of the salient holdings in *Dettinger.*

We recognize that another central holding in the Court of Military Appeals' decision in *Dettinger* was that an appellate court could not intervene in reversing a decision of the trial judge based simply upon a view that an alternative holding could have been made in an area accorded to the trial judge's discretionary authority. *Dettinger, supra* at 224. This Court, as well, has been justifiably reluctant to embark upon any general policy of intervention in areas which we recognize are appropriately left to the decision of the judge trying the case. The trial forum contains decision-making demands far different, in most instances, from those presented to appellate tribunals. *See United States v. Breen,* 11 M.J. 559 (N.C.M.R.1981).

This concept, however, of appellate restraint, does not now, and never has mandated impotence or inaction when the trial court's decision, although clearly within the "sphere of its discretionary power", *Breen, supra* at 560, is exercised in a manner that cannot be supported under any approved and objective standards. The trial judge's rulings, when granted appellate deference, must have evolved from observable and rational application of the law to the facts presented in the recognized arena of in-court testimony, presentation of evidence, and assessment of conflicting claims of credibility made before the trial judge. The concept of judicial discretion contains, by its very definition, authority accorded and granted to the trial judge in consideration of his recognized expertise, experience and training in the law; authority upon which our system of justice may confidently rely. This concept, however, has never granted to the trial judge unfettered and nonreviewable discretion. *Styria v. Morgan,* 186 U.S. 1, 9, 22 S.Ct. 731, 734, 46 L.Ed. 1027, 1033 (1901). To do so would invite chaos in our system of military justice.

We are aware of no judicial authority which would bar this Court from intervention, for example, in a trial judge's decision which found that a period of seven days confinement was "unreasonable," a denial of speedy trial rights, and which resulted in a dismissal of charges by the trial judge. There is no recognized presumption that such a brief period is violative of the speedy trial rights of an accused under Article 10, UCMJ, 10 U.S.C. § 810. We are also aware of no statutory or conclusive case authority which would apply a *per se* rule of reasonableness to such a brief period of delay.

We would be subject, therefore, to an exercise of the trial judge's discretion in an area specifically within his recognized realm of authority. *Dettinger, supra.* Yet any interpretation of *Dettinger* which would bar this Court from reevaluation of a trial judge's dismissal of charges in such an instance, due to an asserted denial of speedy trial rights, is, in our view, a misplaced application of our higher court's opinion in

that case. We view that opinion as clearly determinative of the limits of appellate action, in regards to a trial judge's discretionary ruling, where only an alternative ruling could have been made, or where, in evaluating the basis of the trial judge's ruling, we, if rendering the original decision, might have ruled differently. In neither circumstance are we authorized to intervene. *See United States v. Redding,* 11 M.J. 100, 109–11 (C.M.A.1981); *Dettinger, supra* at 224; *United States v. Freeman,* 15 U.S.C.M.A. 126, 35 C.M.R. 98 (1964).

■ When, however, that decision, although exercised within an accepted sphere of the trial judge's discretion, is less dependent upon "on the scene," in-court, evaluations of witness demeanor or credibility, physical evidence, or courtroom dynamics, than upon an assessment of documentary evidence, and legal authorities and doctrines adequately and clearly presented in the written record, what justification or logic can support a policy of unconditional appellate deference to the decision made at the trial level? In our view, unconditional acceptance of such a concept is not justified. This Court is empowered to act, when the trial judge's ruling is not supported, upon objective evaluation, by recognized concepts and legal authorities. This intervention, if necessary, does not have as its purpose the disruption or usurpation of the accepted and traditional authority of the trial judge. Indeed, intervention, if deemed necessary, has as its purpose, the restoration of judicial equilibrium and consistency. *See Langnes v. Green,* 282 U.S. 531, 51 S.Ct. 243, 75 L.Ed. 520 (1930); *Ex parte United States,* 242 U.S. 27, 37 S.Ct. 72, 61 L.Ed. 129 (1916); *Styria, supra; Rosenberg,* Appellate Review Of Trial Court Discretion, 79 F.R.D. 173 (1979). Discretion cannot become a license for unfettered personal opinions, arbitrary will, or inconsiderate action. *Styria, supra.*

When a trial judge's ruling is clearly erroneous, even though it has issued in regard to a legitimate subject of judicial discretion, the ability and power of an appellate court to reverse that ruling has been a long recognized principle of American jurisprudence. *See Burns v. United States,* 287 U.S. 216, 222–23, 53 S.Ct. 154, 156–57, 77 L.Ed. 266, 270 (1932); *Langnes, supra; United States v. Perez,* 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824); *United States v. Glenn,* 473 F.2d 191, 196 (D.C.Cir.1972); *United States v. Hardin,* 443 F.2d 735, 737 (D.C.Cir.1971); *Beausoliel v. United States,* 107 F.2d 292, 294–95 (D.C.Cir.1939).

We, therefore, now examine the ruling of the trial judge in this case.

*Evidence Presented To The Trial Judge*

■ The accused presented evidence, essentially reflected in the chronology above, to respondent. Our review of the record indicates significant focus was directed by the accused to the delay related to the appointment of counsel. The Government admitted that there had been delay in appointment of counsel. With that observation, we are in universal agreement. There is no excuse, that we can derive or even infer from the record, sufficient to justify the failure of the Government to provide appointed counsel to the accused promptly upon his incarceration. We are willing to accept a reasonable period of delay in the actual appointment of counsel to an accused incarcerated in a large command. The obvious service-wide limitations in terms of judge advocate resources against size and magnitude of caseload are understood by the military judges sitting at this appellate level. However, no evidence of exigent or unusual circumstances was presented. before the trial judge to, in any way, justify this unacceptable delay in insuring access by the accused to qualified legal counsel and representation. We note that there was some indication in the record of the accused declining legal counsel at his initial magistrate's hearing. There was also conflicting evidence of any subsequent requests for counsel by the accused. The accused contends that he had made several requests for counsel representation to his brig counselor and to command representatives following the magistrate's hearing. The in-court and stipulated testimony of those in-

dividuals, as well as records at the brig, reflected no recollection or recordation of any requests made by the accused. That, however, is no justification, as the Government conceded, for a failure to appoint counsel within a reasonable period after the accused's incarceration. *United States v. Przybycien,* 19 U.S.C.M.A. 120, 122, 41 C.M.R. 120, 122, n.2 (1969).

 When, however, the extreme remedy of dismissal of charges is invoked, there must be a cumulative level of oppressive or arbitrary actions or inaction by the Government which delays the speedy disposition of the trial. Alternatively, when accused demands speedy trial the Government must establish reasonable justification for any delays in bringing the accused to trial promptly. *United States v. Burton, supra.* However, denial of counsel does not, in and of itself, represent denial of an accused's right to speedy trial. The Government's action or inaction following the incarceration of a person subject to the Uniform Code of Military Justice must reflect reasonable, non-oppressive movement to promptly bring such person to trial or, alternatively, to dismiss the charges. Article 10, UCMJ.

The lengthy chain of appellate decisions which has interpreted the statutory commands of Article 10, UCMJ, requires no repeating here. We note, as did all parties at the proceedings below, that the period of pretrial confinement involved here does not invoke the "heavy burden" of establishing diligence on the part of the Government, as distinguished from the balancing of the Government's conduct against that of the accused. *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); *United States v. Marshall,* 22 U.S.C.M.A. 431, 47 C.M.R. 409 (1973); *United States v. Burton, supra.*

The respondent, from our examination of both the record and his memorandum of decision, considered:

The aforementioned periods of: 19 days delay between the date investigative agents obtained an incriminatory statement from a co-suspect and the date an interim report was forwarded to battalion headquarters;

the 12-day period which elapsed between the date the interim investigative report was received at battalion headquarters and the date the immediate subordinate command of the accused forwarded a request for legal services to the Legal Services Support Office;

the 55 days between confinement and appointment of counsel;

the failure of the Government to comply with Article 33, UCMJ, following the appointment of an Article 32, UCMJ, investigating officer;

the failure of the Government to inform accused of the specific charges against him until 75 days after confinement;

as cumulatively representing under the "totality of circumstances", a failure to establish that the delays were not unreasonable or oppressive.

 We have objectively examined the entire record and, applying the law to the evidence presented to the trial judge, we find:

1. No merit to the asserted defect regarding Article 33, UCMJ; the accused was referred to trial by special court-martial and we find no prejudice accruing to the accused under the circumstances.

2. The period of time involved in preparing and forwarding the investigative report of an alleged conspiracy to steal a Government weapon and ammunition and the apparent receipt of such stolen property involving two other alleged conspirators was not objectively unreasonable; nor was the time period involved in the forwarding of a written request for legal processing from the accused's immediate command unreasonable or indicative of any oppressive or arbitrary delay. Such brief periods do not require a specific day by day accounting by the Government under any objective evaluation of administrative processing requirements. *See United States v. Tibbs,* 15 U.S.C.M.A. 350, 35 C.M.R. 322 (1965).

3. The asserted failure of the Government to inform the accused of the charges against him until some 75 days after his confinement would, on its face, present a blatant violation of Article 10, UCMJ. However, we note in the record, that the accused testified that he was informed of the reasons for being placed in confinement at his initial magistrate's hearing on 9 June, four days after his initial confinement. We also note from the record that the accused testified that he was visited each week by a command representative in the person of his company commanding officer, executive officer, first sergeant, administrative chief. We find patently and objectively unreasonable, the asserted finding by the trial judge that "no evidence" was presented as to the accused being informed of the charges against him until the date he was formally served with a copy of the Charge Sheet (Memorandum, 4).

4. We find that the unauthorized absence of the alleged co-suspect, PFC M, was an appropriate factor in evaluating the Government's movement toward trial. The record indicates it was the intention of the convening authority to refer co-suspect M to trial before the accused (Appellate Exhibit V). *See United States v. Johnson,* 3 M.J. 143 (C.M.A.1977).

5. We find the lengthy period of delay involved in the appointement of counsel to be clearly unreasonable as we have previously observed. We do not find from our examination of the record, however, that the accused has been materially prejudiced at this stage of the proceedings in connection with his speedy trial rights under the Code.

We note further, in our examination of the record, after both the accused and the Government had presented their evidence on the speedy trial motion at the initial Article 39(a) session, the respondent, prior to setting a date for a subsequent Article 39(a) session at which time counsel briefs would be presented and argument on the motion heard, stated:

Let me state my position. Succinctly stated, it is as follows: the government has the burden of persuasion on this motion. I don't see 90 days of pretrial confinement, so we are not dealing with a BURTON presumption; I do see a request for speedy trial on August 10th, and by Appellate Exhibit II, I see what I consider to be diligent movement by the government to get the case to trial. What I am concerned about, and what I don't think either side is prepared to address right now, unless they have cases specifically on point, is the impact of the accused's not being represented by counsel, on the due process aspects of this case. And I am not aware of any case on point, and I am going to need time to do some research. I am also going to need written motions from both counsel, with specific emphasis on that particular point; how, if at all, the fact that the accused in this case wasn't assigned counsel for some 55 days, while in pretrial confinement, impacts on a speedy trial motion or a due process argument, and what relief would be requested if it is not a speedy trial motion.

We have exhaustively examined the evidence considered by the respondent trial judge; the bases of his rulings as they are presented both in the record and in his memorandum of decision. We have also objectively applied the statutory principles of Article 10, UCMJ, the substantive concepts of paragraphs 68*i* and 215*e* of the *Manual for Courts-Martial, 1969 (Rev.),* and the balancing test of *Barker v. Wingo, supra,* to the facts and circumstances of this case. *See United States v. Parish,* 17 U.S.C. M.A. 411, 38 C.M.R. 209 (1968).

We conclude that under an objective evaluation of the facts and circumstances of this case, the evidence presented by the Government demonstrates reasonable and entirely appropriate periods of delay relative to all phases of the case, with the obvious and clearly unacceptable exception of the delay in appointing counsel. That delay in counsel appointment, however, has not, either alone, or in combination with the other periods of delay,

582

presented the set of circumstances for which either Congress or the military justice system provided the right to speedy trial standard.

We have specifically not attempted to substitute our views for that of respondent as to what might have been an alternative ruling in this case. We conclude, instead, that circumstances presented cannot objectively support the respondent's ruling and the respondent therefore abused his discretion in so ruling.

We do not lightly arrive at such a determination, as each member of this Court well knows the consistent and unique demands placed upon the learned members of the trial judiciary, and we in no way portend in this decision, a relaxation of the appellate principle of appropriate deference to trial court decisions arrived at in accordance with the law.

The petition of the Government for extraordinary relief is granted. The decision of the respondent military judge dismissing the charges in this case is reversed. The respondent is directed to reinstate the charges against the accused and proceed with the court-martial proceedings.

The record of the proceedings are returned to the Judge Advocate General of the Navy for remand of the record to the convening authority for actions consistent with our decision.

Chief Judge CEDARBURG and Judge GORMLEY concur.