**UNITED STATES, Appellant,**

v.

**Joseph C. ZAMMIT, Fireman Apprentice,
U.S. Navy, Appellee.**

No. 44205.

NMCM 81–2447.

U.S. Court of Military Appeals.

Oct. 3, 1983.

For Appellee: *Lieutenant Philip J. She-best, JAGC, USNR* (argued); *Lieutenant*

*Commander David S. Durbin, JAGC, USNR* (on brief).

For Appellant: *Lieutenant Commander D.L. Kelly, JAGC, USN* (argued); *Commander W.J. Hughes, JAGC, USN, Major Charles Wm. Dorman, USMC* (on brief).

*Opinion of the Court*

COOK, Judge:

Appellee was convicted by a special court-martial, military judge alone, pursuant to mixed pleas, of five specifications of unauthorized absence and sixteen specifications of failing to report to restricted men's muster, in violation of Article 86, Uniform Code of Military Justice, 10 U.S.C. § 886. He was sentenced to a bad-conduct discharge, confinement at hard labor for 45 days, forfeiture of $275 pay per month for 3 months, and reduction to E–1. The convening and supervisory authorities approved the sentence. The Court of Military Review approved the findings of guilty of four of the unauthorized absences and reduced the duration of the fifth unauthorized absence but otherwise approved it. The Court of Military Review also set aside the convictions of all sixteen specifications alleging failure to report. Reassessing the sentence, the Court of Military Review remitted one month's forfeitures, but otherwise affirmed. *United States v. Zammit,* 14 M.J. 554 (N.M.C.M. R.1982). The Judge Advocate General of the Navy certified the following issue:

> DID THE UNITED STATES NAVY–MARINE CORPS COURT OF MILITARY REVIEW ERR AS A MATTER OF LAW IN SETTING ASIDE AND DISMISSING THE ADDITIONAL CHARGE AND THE SIXTEEN REMAINING SPECIFICATIONS THEREUNDER WHEN IT DETERMINED THAT NO EVIDENCE WAS RECEIVED REGARDING THE APPELL[EE]'S KNOWLEDGE OR REASONABLE CAUSE TO KNOW OF HIS DUTY TO MUSTER?

As the certified issue pertains only to the Additional Charge, we confine our recitation of the facts to that charge.

## I

On June 28, 1980, Lieutenant J.C. Brobjorg, the Chief Engineer of the USS PIEDMONT (AD–17), then having duty as the Command Duty Officer, signed a letter placing appellee on "pre-mast/pre-trial restricted status." The letter informs appellee of his duty to muster and prescribes the times for the four regularly scheduled musters. At appellee's trial, Brobjorg identified the letter and verified its contents. However, he was not present when the letter was delivered (if ever) to appellee. On the lower half of the letter, under the heading "FIRST ENDORSEMENT," there appears what purports to be appellee's signature acknowledging awareness of his restriction "to the limits of USS PIEDMONT (AD–17)." Near appellee's alleged signature there appears the statement, "WITNESSED BY E.W. JOHNSON /s/ IM1/MA." Neither Johnson nor anyone else testified that appellee's signature on the document was genuine. Presented with this state of the evidence, the military judge declined to receive in evidence appellee's purported acknowledgment, but he did accept the notice of restriction from Lieutenant Brobjorg.

Another document admitted in evidence reflected appellee's attendance at the musters. This document was prepared and maintained by the ship's Master-at-Arms section which was responsible for conducting the musters. The document indicates that, commencing with the 1100 hours muster on June 28, appellee began attending musters. According to the document, appellee did not miss a single muster until July 7, when he missed the first muster of the day. Thereafter, he did not miss another muster until July 14, when he missed the late afternoon muster. He missed one muster on both July 18 and 19. Beginning on July 23, his absences became increasingly more frequent and, according to the document, concluded with a stretch of nearly four days in which he missed all musters.

On or about July 15, 1980, after appellee had missed only two musters, the schedule was changed. Personnel obligated to muster were provided a list of the new hours and were required to sign a document acknowledging their awareness of the new hours. Appellee's signature appears together with those of the other restricted men. The officer who secured appellee's signature verified its genuineness at trial. The military judge received this document in evidence along with the officer's testimony.

The Court of Military Review gave as its reason for setting aside the convictions that "no evidence was received regarding appellant's knowledge or reasonable cause to know of his duty to muster at the alleged times and place." According to the court, "the only evidence offered by the Government of appellant's knowledge that he was required to be present at these musters consisted of Prosecution Exhibit 4(a), the restriction orders signed by Lieutenant J.C. Brobjorg addressed to appellant advising him of his restricted status and the times and place of muster." Since "[k]nowledge of the duty" to report "or reasonable cause to know" the same "is a necessary element of the ... offense," para. 165, Manual for Courts-Martial, United States, 1969 (Revised edition), the Court of Military Review concluded that the convictions were "tainted by lack of proof of this element." 14 M.J. at 562. Accordingly, they set aside the findings of guilty of the Additional Charge and its specifications.

## II

In concluding that there was "no evidence" of appellee's awareness of his duty to muster—if indeed they did—the Court of Military Review was certainly wrong. The principles of circumstantial evidence are so well established in the law as to require no exposition here. *See* J. Wigmore, *A Treatise on the Anglo-American System of Evidence in Trials at Common Law* § 25 (3rd Ed. 1940); *McCormick's Handbook of the Law of Evidence* § 185 (E. Cleary 2nd Ed.

1972); para. 74a(3), Manual, *supra.* The fact that appellee submitted himself to some 95 restricted musters, commencing *precisely* on the day restriction was first ordered, was undoubtedly evidence that he knew of his duty to be there. In addition, his acknowledgment of the new muster times was further evidence of his knowledge of that duty.

Had this case arisen as a challenge to the sufficiency of the evidence to sustain a conviction, there would have been no question that the evidence was sufficient as a matter of law, since there was "some competent evidence from which the" fact-finder could "find beyond a reasonable doubt, the existence of every element of the offense[s] charged." *United States v. Papenheim,* 19 U.S.C.M.A. 203, 205, 41 C.M.R. 203, 205 (1970). *See United States v. Wilson,* 6 M.J. 214, 215 (C.M.A.1979); *United States v. Taylor,* 21 U.S.C.M.A. 220, 222, 44 C.M.R. 274, 276 (1972). By the same token, the Court of Military Review was incorrect as a matter of law in asserting that there was no evidence of appellee's knowledge. Possibly, the Court of Military Review simply misspoke itself, meaning instead to state that it was not convinced beyond a reasonable doubt that appellee was aware, or had reasonable cause to be aware, of his duty. Had the Court of Military Review so stated, we would have no occasion to reweigh the factual determinations made by it. *United States v. Wilson, supra.* However, the court's conclusion—at least as presently formulated—is erroneous as a matter of law, as there plainly was evidence of appellee's knowledge of his duty.

Accordingly, the certified question is answered in the affirmative; the decision of the United States Navy-Marine Corps Court of Military Review as to the additional charge and its specifications is reversed; and the record of trial is returned to the Judge Advocate General of the Navy, who may submit the record of trial to the Court of Military Review for further proceedings under Article 66(c), UCMJ, 10 U.S.C. § 866(c), as to the additional charge and its specifications.

Chief Judge EVERETT and Judge FLETCHER concur.