**UNITED STATES**

v.

**Louis D. MARESCA, 131 44 6330 Chief Warrant Officer (W–2), U.S. Navy.**

**NMCM 87 0006.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 9 Oct. 1986.

Decided 21 June 1988.

CDR J.A. WILLIAMS, JAGC, USN, Appellate Defense Counsel.

Maj. J.L. POWERS, USMC, Appellate Defense Counsel.

MICHAEL L. SANDUL, Civilian Counsel.

Lt. KEVIN R. SMITH, JAGC, USNR, Appellate Government Counsel.

Before GLADIS, CASSEL and MIELCZARSKI, JJ.

CASSEL, Judge:

Contrary to his pleas, appellant was convicted by a General Court–Martial of larceny of a wallet and an American Express card, the property of one LT Johanesmeier, stealing $20.00, the property of the United States, and, in a shop in Spain, forging a credit card purchase slip on 20 December 1985 in violation of Articles 121 and 123, respectively, of the Uniform Code of Military Justice (UCMJ). He was sentenced to five months confinement, forfeiture of $400.00 pay per month for five months, and dismissal from the Naval Service. Appellant requested deferment of the confinement portion of his sentence. This request

was denied by the convening authority on 17 October 1986. There was later a Rule for Courts–Martial (R.C.M.) 1105 submission which, along with the staff judge advocate's recommendation, was considered by the convening authority before he approved the sentence on 12 December 1986.

Before us appellant has raised three issues.

## I.

APPELLANT WAS DENIED HIS RIGHT TO A SPEEDY TRIAL AS GUARANTEED BY THE MANUAL FOR COURTS–MARTIAL.

## II.

THE ACCUSED'S GUILT AS TO SPECIFICATION 5 OF CHARGE I AND THE SPECIFICATION OF CHARGE II WAS NOT PROVEN BEYOND A REASONABLE DOUBT.

## III.

THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF THE ACCUSED WHEN HE DENIED THE DEFENSE MOTION TO SUPPRESS A CONFESSION OBTAINED FOLLOWING THE APPREHENSION AND A TWENTY DOLLAR BILL (PROSECUTION EXHIBIT 17) SEIZED INCIDENT TO THE APPREHENSION.

We find no merit in the appellant's assignments of error. We will, however, discuss the assignments *seriatim*.

## I.

With respect to appellant's first assignment of error, the military judge made the following findings of fact:

25 January 1986—The accused was apprehended and questioned by Naval Investigative Service.

26 January 1986—The accused was released from custody following interrogation.

14 April 1986—The Commanding Officer, Naval Communication Station, Rota, re-quested trial team for pretrial investigation.

21 April 1986—Lieutenant J. Soukup appointed as Investigating Officer, Lieutenant T. Algiers appointed as Government counsel, and Lieutenant A. Avila appointed as defense counsel.

13 May 1986—Lieutenant J. Soukup relieved, and Lieutenant P. A. McTaggert appointed as Investigating Officer.

23 May 1986—Lieutenant T. Algiers relieved, and Lieutenant M.F. Lundberg appointed as Government counsel.

27 May 1986—Charges are sworn and preferred, defense counsel receives copy of preferred charges from Lieutenant M.F. Lundberg, Government counsel. Accused meets with Lieutenant Avila and discusses preferred charges. Lieutenant Lundberg did not intend that by providing a copy to the defense counsel that the accused be notified.

12 June 1986—Pretrial investigation, first pretrial investigation begins. Accused is notified of the preferred charges by the Investigating Officer.

18 June 1986—Defense counsel submitted a discovery request to Government counsel.

21 July 1986—The staff judge advocate, COMNAVACT, Spain, submitted pretrial advice per Article 34, U.C.M.J., 10 U.S.C. § 834, to the general court-martial convening authority.

29 July 1986—Charges are preferred to a general court-martial—referred, excuse me, to a general court-martial.

7 August 1986—an oral deposition taken of Ms. Concepcion Jimenez Diaz.

21 August 1986—Lieutenant M.F. Lundberg withdraws as Government counsel, Lieutenant D. Gonzalez is appointed it.

1 September 1986—Lieutenant Avila provides trial counsel with a copy of a motion to invalidate the Article 32 Investigation and the deposition of Ms. Jimenz Diaz because of the participation of Lieutenant Lundberg in those proceedings.

3 September 1986—Charges are withdrawn without prejudice, and a new pretrial investigation ordered for original charges and an additional charge. Addi-

tional charge preferred. Lieutenant D. Kennebrew appointed as Investigating Officer.

5 September 1986—The accused informed of the Additional Charge by Lieutenant D. Gonzalez. Pretrial investigation conducted.

6 September 1986—Second pretrial investigation conducted.

10 September—and completed. That should read on 6 September 1986, second pretrial investigation conducted and completed.

10 September 1986—Investigating Officer, Lieutenant Kennebrew submits Article 32 Investigation Report to convening authority.

11 September 1986—Second pretrial advice submitted to general court-martial convening authority by staff judge advocate, pursuant to Article 34 of the Uniform Code of Military Justice.

12 September 1986—Original charges re-referred to a general court-martial, additional charges referred to general court-martial. Accused receives a copy of the pretrial investigative report, officer's report, and the accused is served with charges.

16 September 1986—The accused submits a request for speedy trial. Accused submits, also, objections to pretrial investigating officer's report.

17 September 1986—The accused notifies trial counsel of proposed objections to the charge sheet.

18 September 1986—The convening authority advises defense counsel that all matters contained in letter of objections, dated 16 September 1986, had been considered.

19 September 1986—A 39(a) session to consider objections to errors on the charge sheet held, military judge determined that charges were preferred on 27 May 1986 vice 26 May 1986, and that the date of notice to the accused of preferred charges, was the date of the initial pretrial investigation on 12 June 1986. And,

on that date also, 19 September 1986, the Government withdraws the Additional Charge.

20 September 1986—A 39(a) session is held on pretrial motions.

21 September 1986—The military judge deliberates on the motions, counsel submit proposed findings of fact to the military judge in chambers.

22 September 1986—The military judge enters findings of fact on the motions. Accused enters pleas of not guilty. The military judge granted the government counsel's request for a continuance over the defense objection.

6 October 1986—The accused presents a motion to dismiss for lack of speedy trial.

Appellant raises two issues regarding his claimed lack of a speedy trial. The first issue concerns when the speedy trial clock began to run. More specifically, appellant claims that the notice requirement of R.C.M. 308 was satisfied on 27 May when the prosecutor delivered to appellant's defense attorney a copy of the charge sheet. The Government, on the other hand, argues that formal notification did not take place until 12 June. The issue presented is whether the delivery of the charge sheet to the trial defense counsel constitutes personal notification within the meaning of R.C.M. 308. The second issue concerns whether the military judge properly excluded 14 days of delay as resulting from the unavailability to the Government of "substantial evidence" under R.C.M. 707(c)(5)(A). We will discuss the latter issue first.[1]

Rule for Courts–Martial 707(c)(5)(A) excludes periods of delay "because of unavailability of substantial evidence relevant and necessary to the prosecution's case when the Government has exercised due diligence to obtain such evidence and there exists at the time of the delay grounds to believe that such evidence would be available within a reasonable period of time." In this case, the "substantial evidence" consisted of two witnesses, Ms. Diaz and LT

---

1. We note that the appellant was not placed in pretrial confinement, so we deal only with the applicability of R.C.M. 707(a).

Dornisch. LT Dornisch was unavailable due to his Temporary Additional Duty on a mission where his presence was deemed essential. Ms. Diaz, a Spanish national, was unavailable because of a pre-arranged trip to England to attend a course that could not be rescheduled or cancelled. The military judge found their testimony to be relevant and necessary. He further found that the short period for delay occasioned by their absence would not prejudice the appellant.

▇▇▇ Before this Court, appellant argues that the prosecution cannot avail itself of the "substantial evidence" exclusion in Rule 707(c)(5)(A) because of the existence of testimonial substitutes therefor, namely the sworn testimony of LT Dornisch at the Article 32 hearing, and the deposition of Ms. Diaz. Underlying this claim is the question of whether live testimony can be considered "substantial" or "necessary" under the 707(c)(5)(A) exclusion where alternate modes of eliciting the witness' testimony are available to the prosecution. We find no merit in appellant's argument.

R.C.M. 707(c)(5)(A) allows for exclusions of time under the speedy trial clock where the Government cannot immediately obtain "substantial evidence" that is necessary and relevant to its case and which will not unreasonably delay the orderly prosecution of the case. While it may be true that in this case (or any case for that matter) the Government could have utilized testimonial substitutes for both witnesses (in the form of depositions and/or former testimony), Rule 707(c)(5)(A) does not require that the Government utilize potentially less effective and objectionable substitutes where

the requirements of the rule are otherwise met.[2] The prosecution is entitled to present its most effective and persuasive case within the normal limits of the speedy trial and evidentiary rules. *See, e.g.,* Military Rule of Evidence (Mil.R.Evid) 401 & 403; *United States v. Marrero,* 705 F.2d 652 (2d Cir.1983). Contrary to the appellant's arguments, however, the speedy trial rules are *not* designed to limit the type of evidence presented by the prosecution, rather the rules are meant solely to protect the right of an accused to be tried in a timely manner.[3] To accept appellant's argument would be to graft on to the rule an anamolous requirement subordinating live in-court testimony to other alternate and less constitutionally tolerable modes of proof.[4]

▇▇▇ In this case, we have no difficulty in sustaining the military judge's ruling that the testimony of LT Dornisch and Ms. Diaz was "substantial" within the meaning of Rule 707(c)(5)(A). LT Dornisch was the victim in two of the larcenies alleged and his testimony was also relevant with respect to Charges III and IV. As to the forgery charge, the anticipated testimony of Ms. Diaz was virtually the only evidence that the prosecution had in that she identified the appellant as the one who used the stolen credit card in question to purchase a dress at her shop. We further agree with the judge below that the witnesses were properly unavailable and that the delay necessary to secure their presence was reasonable. Perhaps most importantly, we agree that the delay caused no palpable prejudice to the accused despite the barren assertions made by his trial defense counsel. To be sure, the appearance of these

---

**2.** This essentially relates back to the question of prejudice, that is, if the requirements of the rule are met (unavailability, necessity, and reasonableness of delay), there is little likelihood that any prejudice can flow to the accused.

**3.** Appellant's objection to the use of the live testimony in this case is adequately addressed in the military judge's determination of whether the testimony is necessary and relevant in the first place. That is, where the testimony will be merely cumulative or irrelevant, that testimony should be deemed "non-substantial" within the meaning of the Rule. That determination lies

within the broad discretion of the military judge and will not be overruled absent an abuse of the trial court's discretion.

**4.** *See, e.g., California v. Green,* 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970); *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965) (both cases stressing that the right of confrontation and cross-examination is a fundamental requirement for a fair trial). *See also United States v. Yeauger,* 24 M.J. 835 (N.M.C.M. R.1987).

two witnesses worked to the appellant's disadvantage, but that fact alone does not amount to "prejudice" within the context of the speedy trial provisions. A continuance granted to allow the Government to obtain "substantial evidence," without more, does not cause an accused prejudice. "Prejudice is not caused by allowing the Government to properly strengthen its case, but rather by delays intended to hamper the defendant's ability to present his defense." *United States v. Tedesco*, 726 F.2d 1216, 1221 (7th Cir.1984). *See also United States v. Dennis*, 625 F.2d 782, 794 (8th Cir.1980); *United States v. Johnson*, 579 F.2d 122, 123–24 (1st Cir.1978). There being no indication or claim that the delay here infringed upon the appellant's ability to present his defense, we find that no prejudice flowed from the military judge's ruling.

Accordingly, we find that the military judge properly excluded the period from 23 September to 5 October as delay resulting from the unavailability of substantial evidence under R.C.M. 707(c)(5)(A).

The next question raised by the appellant is whether the notification requirement of R.C.M. 308 is accomplished where, prior to trial, defense counsel receives a copy of the charge sheet. Appellant encourages this Court to adopt a *de facto* notification rule to trigger the running of the speedy trial clock whenever defense counsel receives notification of charges against a client, and he cites to *United States v. Tibbs*, 15 U.S.C.M.A. 350, 35 C.M.R. 322 (1965), and *United States v. Wholley*, 13 M.J. 574 (N.M.C.M.R.1982) in support thereof. Government counsel argues that notice of preferral

must be personal, and he cites to the plain language of R.C.M. 308 as being supportive of his position.

■ We reject the notion that delivery of the charge sheet to trial defense counsel *in this case* effected a proper notification of charges to the accused under R.C.M. 308. Speedy trial accountability does not begin until charges are formalized by notification *to an accused* under R.C.M. 308. *See* R.C.M. 707(a). Notification under the military speedy trial rules is of particular importance because of the fact that "any person subject to the UCMJ can prefer charges but such preferral does not signal the *Government's* institution of formal charges." *United States v. Gray* 26 M.J. 16, 23 (C.M.A.1988) (Cox, J., concurring). It is the act of notification that formally signals the Government's institution of charges. Of necessity, such can only be accomplished by a *formal* act by the Government evincing the intent to prosecute and cannot be reduced to an informal act of notice to a third-party whereby the Government simply relies on that person to inform the accused.[5] Given its significance in the military justice process, notification to the accused under R.C.M. 308 must be just that—*to the accused* and not to a third party attorney.[6]

Recently, however, problems may have arisen where commands, for one reason or another, have allegedly taken advantage of the accused's right of personal notification of charges and have deliberately not informed the accused in an effort to manipulate and delay the starting of the speedy trial clock. The Court of Military Appeals

---

**5.** Because an accused is protected from the effects of excessive delay between the acts of preferral and notification by the provisions of R.C.M. 308, we can see no benefit to expanding the concept of notification to include notice to one other than the accused. Not only would an expansion of the notice rule encourage needless inquiries into exactly when an accused of his counsel or some other unspecified third party was "notified" about the charges preferred, but it would also add an unnecessary element of uncertainty into the otherwise mechanical provisions of R.C.M. 707. Additionally, such an expansive reading under the facts in this case would defeat the obvious intent of the President to remedy "pre-notice" delay via the prejudice

oriented provisions of R.C.M. 308 rather than the mechanical dismissal rules embodied in Rule 707.

**6.** Appellant's reliance on *United States v. Tibbs*, 15 U.S.C.M.A. 350, 35 C.M.R. 322 (1965), and *United States v. Wholley*, 13 M.J. 574 (N.M.C.M.R.1982) is misplaced. Both *Tibbs* and *Wholley* arose before the inception of R.C.M. 707, and both cases involved the alleged lack of notification of an accused who has been confined prior to trial. This situation is obviously remedied by the requirement in R.C.M. 707 that the speedy-trial clock begins to run upon the imposition of confinement, regardless of notification.

has, in one recent case, been willing to "impute" personal notification in an effort to remedy the excessive delay between preferral and notification. *See Thomas v. Eddington*, 26 M.J. 95 (C.M.A.1988). From both the briefs and the arguments of counsel before this Court, the issue presented here is not whether the government counsel sought to delay the inauguration of the R.C.M. 707 clock by not notifying the accused at the same time as charges were given to the accused's defense counsel, but rather, what is the effect of such action.

In *Thomas v. Eddington*, 26 M.J. 95 (C.M.A.1988), charges were preferred against the accused on July 17, 1987 but actual "notification" pursuant to R.C.M. 308 was not accomplished until almost eight months later. The accused in that case petitioned the Court of Military Appeals by Writ of Mandamus, asserting that the delay between preferral and notification was the result of the command's policy "to delay the triggering mechanism of the speedy trial requirements contained in R.C.M. 707(a)". 26 M.J. at 95. The Court of Military Appeals granted the petition and dismissed the charges against the accused. In doing so, however, the Court did not pass upon the alleged command policy to manipulate the running of the speedy trial clock. Rather, the Court concluded that despite the lack of formal notification, the accused was "notified" at some point on or before July 31, 1987. *Id.* Implicit in the *Eddington* decision is the warning that excessive delays between preferral and notification will not be tolerated—presumably because of the requirement in R.C.M. 308 that notification occur "as soon as practicable" after preferral.[7]

■ In this case, charges were preferred against the appellant on 27 May 1987. On

that date, trial defense counsel, after making repeated requests, obtained from the Government counsel, LT Lundberg, a copy of the charges against the appellant. The charges were provided to the defense counsel to "let [him] know what was coming up at the Article 32." Record at 18. LT Lundberg further testified that there was no intent to notify the accused pursuant to R.C.M. 308 by giving a copy of the charge sheet to defense counsel. In fact, he testified that his primary concern was "to provide the information ... without starting the speedy trial clock [because] the case was still in an investigation mode." Record at 18. *See also* R.C.M. 306(a) and *United States v. Turk*, 22 M.J. 740 (N.M.C. M.R.1986), *aff'd*, 24 M.J. 277 (C.M.A.1987) (recognizing and giving deference to the commanding officer's broad authority to dispose of offenses after preferral). Formal notification took place on 12 June 1987.

■ Based on these facts, we find that the speedy trial clock began on 12 June when the accused was formally notified of the charges against him. We base this finding on a number of factors. First, while the act of giving a copy of the charges to the defense counsel in this case was specifically *not* meant to effect a notification under R.C.M. 308, we do not view such a motive as always establishing a delay in notification within the meaning of that rule. The appellant *was* personally notified of the charges shortly after delivery of the charge sheet to counsel (which was virtually simultaneous with preferral). In fact, it would only be logical that the charge sheet would *not* have been given to the defense counsel in the first place if LT Lundberg had truly desired to deprive the appellant of his right to be personally notified as soon as practicable.[8] Second, it is

---

7. *See Eddington*, 26 M.J. at 96. The Court did not premise its decision upon that rule however. *See* Footnote 9, *infra.*

8. Contrary to the implied argument of appellate defense counsel, there is no requirement that the accused be notified at the moment when charges are preferred. Rather, an accused need only be served "as soon as practicable." R.C.M. 308. While it might be that the accused *could have been* notified on the same day as the

charges were preferred and delivered to the trial defense counsel, the notification rules provide for no such theoretical inquiry. In fact, the reason why the accused in this case was not served until 16 days after preferral was because his case was still under investigation. This much is recognized in the American Bar Association (A.B.A.) Speedy Trial Standards which form the basis for the current military rules:

> To recognize a general speedy trial right commencing as of the time arrest or charging was

apparent that the charge sheet was given to the defense counsel as an act of professional courtesy rather than as an act meant to be cloaked with any legal significance. Third, the elapsed time between preferral and notification was only 16 days. This period, in our view, is reasonable and in no way contravenes the requirement set forth in R.C.M. 308 that notification of charges occur "as soon as practicable." *Cf. Eddington, supra,* where the delay between the two events was almost eight months.[9] In short, the appellant was informed of the charges against him in a timely manner and we conclude that the speedy trial clock began to run on 12 June when formal notification took place.

Counsel are warned, however, that delays between preferral and notification of charges for the purpose of manipulating the onset of the speedy trial provisions cannot and will not be tolerated. *See, e.g., United States v. Cherok,* 19 M.J. 559 (N.M. C.M.R.1984) *aff'd,* 22 M.J. 438 (C.M.A. 1986). While we realize that R.C.M. 707 imposes a strict requirement of prosecutorial efficiency upon trial counsel, we cannot condone gamesmanship meant only to bootstrap around the plain requirements of the rule. Manipulation of the speedy trial clock via delayed notification to the accused not only threatens to infringe upon the accused's ability to prepare an adequate defense but can also run afoul of traditional notions of due process. *See* R.C.M. 308; *United States v. MacDonald,* 456 U.S. 1, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982); *United States v. Lovasco,* 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977); *United States v. Marion,* 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); *See also United States v. McGraner,* 13 M.J. 408 (C.M.A. 1982). Counsel should further be aware of the fact that such deliberate delaying tactics fall comfortably within the scope of Article 98, UCMJ, 10 U.S.C. § 898. *See, e.g., United States v. Boldon,* 17 M.J. 1046, 1052 (N.M.C.M.R.), *pet. denied,* 19 M.J. 21 (C.M.A.1984) (where a panel of this Court commented on the application of Article 98 to delays involved in the post-trial review process).[10]

## II.

We reject the appellant's second assignment of error. We find competent evidence of record from which the members could conclude beyond a reasonable doubt the existence of each of the elements of the offenses charged. *United States v. Zammit,* 16 M.J. 330 (C.M.A.1983); *United*

possible would have unfortunate consequences for the operation of the criminal justice system. Allowing inquiry into when the police could have arrested or when the prosecutor could have charged would raise difficult problems of proof. A.B.A. Standards, 1982 Supplement, Vol. II, Ch. 12 at 23. *See also United States v. Lovasco,* 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977) (to require an indictment or arrest before an investigation is complete would impair the prosecutor's ability to continue the investigation or pressure prosecutors into resolving doubtful cases in favor of early (and possibly unwarranted) prosecutions).

**9.** It is interesting and important to note, however, that the Court of Military Appeals in *Eddington* specifically *did not* resolve the case on these grounds, instead choosing to "find" *actual* notice under the facts presented and thus trigger a dismissal under R.C.M. 707. Absent such a finding of actual notice, however, *Eddington would not* present a "speedy trial" issue within the ambit of Rule 707 for the simple reason that the speedy trial rules are not triggered until the act of notification. Delay between preferral and notification is specifically addressed by R.C.M. 308, which provides that "the *sole* remedy for a violation of this rule is a continuance or recess of sufficient length to permit the accused to adequately prepare a defense, and no relief shall be granted unless the accused demonstrates that the accused has been hindered in the preparation of a defense." (Emphasis added.) This remedial provision incorporates constitutional speedy trial concepts focusing primarily on the accused's ability to prepare a defense. *See United States v. Stebbins,* 33 C.M. R. 677 (C.G.B.R.1963).

**10.** Active prosecution of counsel under Article 98, UCMJ, could provide an effective deterrent to deliberate manipulation of the speedy trial provisions. We also note that the application of this Article is by no means limited to the trial participants, but also extends to all others up the chain of command who either condone or encourage the practice in a quest for prosecutorial efficiency. In this case, the testimony of LT Lundberg convinces us that there was no attempt made to interfere with a procedural right of the appellant, and therefore a remedy under Article 98 would not be appropriate.

*States v. Bright,* 20 M.J. 661 (N.M.C.M.R. 1985). We are further convinced beyond a reasonable doubt of the appellant's guilt of the offenses of which he was convicted. *United States v. Turner,* 25 M.J. 324 (C.M. A.1987).

### III.

 Appellant further argues that evidence obtained as a result of his apprehension (a $20.00 bill) should be suppressed because the apprehension was unlawful. He claims that his apprehension was illegal in that there was no probable cause to apprehend him and because proper authorization for arrest was not obtained via the requirements of R.C.M. 302 and section 0166 of the Manual of the Judge Advocate General (JAGMAN). Section 0166 of the JAGMAN requires that (except in certain exigent circumstances) commissioned officers and warrant officers may only be apprehended pursuant to specific orders of another commissioned officer. R.C.M. 302 restates and applies the constitutional requirement of probable cause as a prerequisite to all arrests in the military. *See United States v. Schneider,* 14 M.J. 189 (C.M.A. 1982), and Article 7(b), UCMJ, 10 U.S.C. § 807(b).

The record reflects that the appellant was apprehended pursuant to orders given by the appellant's commanding officer. The apprehension was to occur after a "set-up" arranged by the command and the N.I.S. whereby marked money was placed in a wallet and on a table at a party which the appellant attended. The N.I.S. agents waited outside the party and took the appellant into custody upon his leaving the premises. The appellant had on his person one of the twenty-dollar bills that was planted in the wallet. The appellant challenged the legality of his apprehension in a pretrial motion. The military judge ruled

that while the N.I.S. agents did not have probable cause to apprehend the appellant for the theft of the planted twenty-dollar bill, they did have sufficient cause to apprehend based on facts and information relating to the appellant's alleged theft and use of a credit card (which information was known to the agents prior to the planned "set-up").[11] The judge further found that the agents and the appellant's commanding officer intended to apprehend the appellant regardless of the ultimate outcome of the "set-up."

The main thrust of the appellant's argument concerning his apprehension is that even if there existed probable cause to apprehend him after the "set-up" because of information relating to the theft and use of a credit card, there was not probable cause to apprehend at the time that the command authorized his capture pursuant to JAGMAN § 0166. He bases his argument on the fact that the storekeeper who ultimately identified him as the one using the stolen credit card did not make the identification until after the command's permission to apprehend was given to the N.I.S.

It is not clear from the language of JAGMAN § 0166 whether probable cause to apprehend is required before valid permission to arrest an officer can be obtained. We need not address this interesting issue, however, because we find that both at the time permission to apprehend was given and at the actual time of apprehension, there existed a sufficient factual basis to conclude that "an offense [theft and forgery of the credit card] ha[d] been committed and that the person apprehended committed it." *United States v. Schneider,* 14 M.J. 189 (C.M.A.1982) (citing Article 7(b), UCMJ).[12]

In this case, appellant's commanding officer authorized the "set-up" and subse-

---

**11.** The initial plan was to give the host of the party a two-way radio to communicate with the N.I.S. agents waiting in a car outside of the house. When the host noticed the bills missing, he would notify the agents who would apprehend the appellant upon leaving the premises. The host, after noticing that some of the money had been taken and upon seeing Maresca leave, tried to radio the agents but the radio did not work. As a consequence, the agents heard only

a burst of static presumably from the radio inside, and they then saw Maresca exit the house. After he got in his car, he was apprehended by the agents.

**12.** Authorization to apprehend is different from apprehension itself—the former being required by virtue of the JAGMAN and the latter finding its roots in traditional constitutional principles flowing from the fourth amendment. *See*

quent apprehension in mid-January 1986, a week or so before the actual plan was carried out. The apprehension was to take place regardless of whether the appellant took any of the "planted" money because of evidence of his alleged involvement in other thefts within his command. It was in response to this evidence that the order to apprehend was given. Further, we agree with the military judge that, while there was no probable cause to apprehend the appellant for theft of the twenty-dollar bill, probable cause did exist with respect to the appellant's apprehension on charges of forgery and theft of a credit card.

We therefore find that the appellant's arrest by the N.I.S. was properly effected within the rules of Article 7, UCMJ, R.C.M. 302, and § 0166 of the JAGMAN.

Accordingly, the findings and sentence as approved on review below are affirmed.

Judge MIELCZARSKI concurs.

GLADIS, Senior Judge (concurring in the result):

I join in rejecting the assignments of error and affirming the findings and sentence, but write separately because I do not subscribe to the dicta that the accused was not notified for the purposes of Rule for Courts–Martial (R.C.M.), 707 by delivery by trial counsel to defense counsel of a copy of the preferred charges on 27 May 1986. *Cf. Thomas v. Eddington*, 26 M.J. 95 (C.M.A.1988). It is unnecessary to decide whether the 120–day clock was triggered on 27 May 1986 or 12 June 1986. Even if the clock started on 27 May 1986, the accused was brought to trial within 120 days because the period from 22 September 1986 to 6 October 1986 was properly excluded under R.C.M. 707(c)(5)(A).

*Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). We seriously question whether the provisions in JAGMAN § 0166 are meant to impose a strict standard of probable cause upon officers authorizing apprehensions. We interpret JAGMAN § 0166 as being designed to protect the *arresting agent* and to prevent the erosion of military discipline rather than allowing an accused a free way out of an otherwise lawful arrest. To interpret the provision otherwise would be to grant unto commissioned officers and warrant officers an additional measure of constitutional protection that is not given to military enlisted personnel.