**UNITED STATES**

v.

**Christopher A. ANGEL, 235 98 9230, Intelligence Specialist Second Class (E–5), U.S. Navy.**

**NMCM 87 2893.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 10 June 1987.

Decided 15 Feb. 1989.

Pursuant to Rule 17(a) of the Rules of Practice and Procedure of the Courts of Military Review, the Court ordered the case to be considered *en banc* and heard oral argument on the assignments of error raised by the appellant.

■ Appellant makes two assignments of error: first, that he was denied a speedy trial under Rule for Courts–Martial (R.C.M.) 707, Manual for Courts–Martial (MCM), United States, 1984; [1] second, that an unsuspended bad-conduct discharge is inappropriately severe under the circumstances. We need not resolve the second allegation of error because of our resolution of the first.

The military judge accepted as factual the following stipulated chronology:

| | |
|---|---|
| 10 Jan–13 Mar 86 | Alleged offenses committed. |
| 30 Mar 86 | Investigation into alleged offenses begun. |
| 15 Aug 86 | Instant charges preferred. |
| 20 Aug 86 | Article 32, UCMJ, investigation ordered by CO, SEAL Team 6. |
| 21 Aug 86 | Accused provided copy of charges by DC. Accused and DC discuss charges and submit verbal pretrial agreement offer to TC. |
| 22 Aug 86 | TC submits written PTA counter-offer requiring, inter alia, that accused plead guilty "substantially as charged." Defense rejects government counter-offer. |
| 27 Oct 86 | Article 32 scheduled for 19 Nov; joint session with United States v. Voyles. |
| 13 Nov 86 | DC TAD at last minute; unavailable until after scheduled Article 32 date. |
| 26 Nov 86 | SJA from COMNAVSURFLANT agrees to recommend acceptance of PTA offer to CA; offer includes waiver of Article 32. |
| Early Dec 86 | DC TAD. |

LCDR J.J. Quigley, JAGC, USN, Appellate Defense Counsel.

LT Gregory J. O'Brien, JAGC, USNR, Appellate Defense Counsel.

LT Scott A. Hagen, JAGC, USNR, Appellate Government Counsel.

Before COUGHLIN and RILEY, MIELCZARSKI, ALBERTSON, JONES, STRICKLAND and RUBENS, Appellate Military Judges, En Banc.

RUBENS, Judge:

A military judge sitting alone as a general court-martial convicted appellant following his guilty pleas of five specifications of larceny in violation of Article 121, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 921. The military judge dismissed alleged violations of Articles 107 and 132, UCMJ, 10 U.S.C. §§ 907 and 932, respectively, as multiplicious for findings, and sentenced appellant to confinement for three months, reduction to E–1, and a bad-conduct discharge. The convening authority approved the sentence as adjudged.

1. Appellant's guilty plea does not waive the speedy trial issue. *United States v. Davis,* 11 U.S.C.M.A. 226, 29 C.M.R. 226 (1960).

| 30 Dec 86 | DC submits memo to TC expressing intent to submit PTA through chain of command. |
|---|---|
| 5–15 Jan 87 | DC TAD. |
| 30 Mar 87 | DC submits written PTA offer. |
| 31 Mar 87 | Offer and Charge Sheet forwarded to CA. |
| 16 Apr 87 | Charges and specs referred; PTA signed by CA. |
| 1 May 87 | Accused informed by TC of preferral of charges and served with referred charges. |
| May 87 | Case docketed for trial 19 May 87. |
| 15 May 87 | Article 39a session; DC requests continuance from 19 May to 12 June 87. Request granted. |
| 22 May 87 | Circuit MJ redockets trial from 12 to 10 June due to MJ availability. |
| 10 Jun 87 | Trial commences. AE I, VII. |

In accordance with R.C.M. 905(d), the military judge stated the following essential findings on the record:

I find the facts as stipulated between the parties; in addition I find as a fact, that the *accused was well aware from and after mid August 1986 of the offense of which he stood accused and against* [sic] *he would be required to defend himself at trial,* should a trial result. (Emphasis added) R. 22.

Apparently in accordance with *United States v. Postle,* 20 M.J. 632, 640 (NMCMR 1985),[2] the military judge included the following legal basis for his decision in the record:

Number 1: I find the defendant [sic] was not informed by any authorized agent of the convening authority or the government of the instant charges until 1 May 1987;

Number 2: The provision of a copy of the charges to the defense counsel prior to an Article 32 investigation does not constitute informing the accused of the charges under any agency theory, any more than it would constitute service of the charges upon the accused for purposes of, for example, commencement of the accused's 5-day waiting period or such other formal step prior to trial;

Number 3: Since the speedy trial clock started on 1 May 1987, the motion is denied.

... I would note here for the benefit of the reviewing authorities that I think that it is probably an—the extreme example of what the drafter of the 1984 Manual and Rule 707 specifically intended in the crafting of—and I say "crafting of" Rule 707, the speedy trial Rule. I think the government has the option of starting the clock when they want to and if it is resulted [sic], in fact a denial of the very speedy trial right which it's designed to protect then I think it's up to the appellate courts to tell us so. But until such notice, I'm going to apply it as written.

R. 23.

The issue in this case is, when did the Government notify appellant of the preferred charges? The Government argues that the trial counsel notified appellant of the preferred charges on 1 May 1987, and filled in Block 12 of the Charge Sheet (DD Form 458) to memorialize this event. If so, appellant was brought to trial in 40 days and the 120-day speedy trial clock in R.C.M. 707(a) was not violated.[3] Appellant, on the other hand, argues that the Government notified him of the preferred charges on 21 August 1986 when appellant's immediate commander ordered an Article 32, UCMJ, investigation of the preferred charges and the defense counsel, who had been given a copy of the charge sheet, discussed the charges with appellant. If so, appellant asserts he was brought to

---

**2.** *See also United States v. Ruhling,* 28 M.J. 586 (NMCMR 1988) (military judge's compliance with *Postle* ).

**3.** There was no arrest or pretrial confinement in this case so the 90-day speedy trial clock in R.C.M. 707(d) does not apply.

trial in not less than 270 days[4] and the charges must be dismissed under R.C.M. 707(e).

In *Thomas v. Edington,* 26 M.J. 95 (C.M.A.1988), the Government did not complete Block 12 of the Charge Sheet and Petitioner Thomas asserted that it was the policy of some Navy commands to deliberately not notify accused of preferred charges to avoid triggering R.C.M. 707(a). The Court of Military Appeals stated, however, that it "need not decide this case based upon the alleged Navy policy" because the "undisputed facts of this case ... [demonstrate] that petitioner, indeed, received actual 'notice' of the charges against him." *Id.,* at 95, 96. The Court then held that the accused had been notified on or before a certain date, that he had not been brought to trial within 120 days of that date, and dismissed the charges without specifying the event that provided actual notice.

█ In *United States v. Amundson,* 22 U.S.C.M.A. 208, 49 C.M.R. 598 (C.M.A. 1975), the Court of Military Appeals considered whether a "legal hold," coupled with a loss of certain privileges (*e.g.,* PX, commissary, leave, assignment to off-base details), was tantamount to "arrest" so as to trigger the speedy trial protection of Article 10, UCMJ, 10 U.S.C. § 810. The resolution of that issue is not important in this case, but the judicial methodology is. The Court indicated that it was not bound by the label assigned to these facts by the Government (*i.e.,* that what it did was a "legal hold"), but rather would independently evaluate the facts and decide what these facts were under the law.[5] In *Thomas v. Edington* the Court of Military Appeals held that notice occurred on or before a certain date notwithstanding the fact that

Block 12 of the Charge Sheet was left blank and the Government asserted that notice occurred on a later date. Similarly, we are not bound by the Government's assertions as to when notice occurred in a given case. The date in Block 12 of the Charge Sheet is some evidence of the date of *a* notice, but is not necessarily determinative of the date of the *earliest* notice which meets the requirements of R.C.M. 308(a).[6]

█ Our issue is narrowed, then, to whether the events of 20 and 21 August 1986 constitute *actual notice* of preferred charges. If the immediate commander caused actual notice to be given on 21 August 1986, then the speedy trial clock began to run on that date and the notice on 1 May 1987 is irrelevant for speedy trial purposes. There are three sets of critical facts in the record that bear on this issue. First, on 20 August 1986 the appellant's immediate commander, the Commanding Officer of SEAL Team 6, ordered an investigation under Article 32, UCMJ, and R.C. M. 405. He provided a copy of the order and the Charge Sheet to the defense counsel and directed the Investigating Officer to notify the accused of the time and place of any hearing. Second, the defense counsel discussed the charges with appellant and submitted a verbal pretrial agreement offer to the trial counsel on 21 August 1986. Third, the trial counsel responded to the verbal offer of a pretrial agreement on 21 August 1986 with a written memo which required appellant, *inter alia,* to plead guilty "substantially as charged." These pretrial agreement negotiations continued until the agreement was signed on 16 April 1987.

---

**4.** We compute the delay between 21 August 1986 and trial on 10 June 1987 as 285 days without deduction of any R.C.M. 707(c) exclusions, but this disparity does not affect the outcome.

**5.** *See also United States v. Walls,* 9 M.J. 88 (C.M.A.1980); *United States v. Powell,* 2 M.J. 6 (C.M.A.1976); and *United States v. Schilf,* 1 M.J. 251 (C.M.A.1976) (all whether restriction was tantamount to confinement).

**6.** R.C.M. 308(a) states that "[t]he immediate commander of the accused shall cause the ac-

cused to be informed of the charges preferred against the accused, and the name of the person who preferred the charges and of any person who ordered the charges to be preferred, if known, as soon as practicable." The Code and the Manual do not prescribe any particular method for accomplishing this notification. The Discussion accompanying this rule encourages the completion of Block 12 of the Charge Sheet to memorialize this notice.

We find that appellant's immediate commander caused actual notice of the preferred charges to be given to appellant on 21 August 1986. This is the date on which the immediate commander sent a copy of the preferred charges to appellant's defense counsel who forseeably shared this information with his client in order to prepare for the impending investigation. *See generally* R.C.M. 502(d)(6) and Discussion. This met the plain meaning of the requirements of Article 30(b), UCMJ, 10 U.S.C. § 830(b), and R.C.M. 308(a), and started the R.C.M. 707(a) 120-day speedy trial clock. The Government's post-notice behavior further supports this conclusion. Although appellant waived the Article 32, UCMJ, investigation, one of his basic rights at such an investigation would have been to be informed of the charges against him. Article 32(b), UCMJ; R.C.M. 405(f)(1). Moreover, the Government negotiated a pretrial agreement with the accused, thereby acknowledging that he had actual notice of the preferred charges. Indeed, it would be pointless, if not improper, to negotiate a pretrial agreement with an accused who had not been notified of the preferred charges. Thus, the Government's behavior makes untenable any claim that they did not notify appellant on 21 August 1986.

Accordingly, appellant was brought to trial in excess of 120 days from the date of notification of preferral [7] and was denied a speedy trial under R.C.M. 707(a). Appellant's first assignment of error is meritorious. The findings of guilty and the sentence are set aside. The charges are dismissed.

Senior Judges COUGHLIN and RILEY and Judges MIELCZARSKI, ALBERTSON, JONES, and STRICKLAND concur.

BYRNE, Chief Judge (dissenting):

The military judge was correct when he held that the speedy trial clock under R.C. M. 707(a) did not begin to run until 1 May 1987—the day that the appellant was personally informed and officially notified by the trial counsel of the preferred charges.

## I

### Informing the Accused of Charges and Speedy Trial Accountability: Long–Term Interrelationship

There are two significant events involved in this issue, both of which have their own separate significance but which have been interrelated for at least 28 years:

a. Informing the accused of the nature of the charges against him; *and*

b. The formal presentment of charges by the Government commencing speedy trial accountability.

## A

### Informing the Accused of the Nature of the Charges: Defense Preparation

Article 30(b) of the Uniform Code of Military Justice [hereinafter UCMJ] states:

Upon the preferring of charges, the proper authority shall take immediate steps to determine what disposition should be made thereof in the interest of justice and discipline, and the person accused shall be informed of the charges against him as soon as practicable.

Although it was apparently intended, while being drafted, as a "pretrial confinement" speedy trial provision, Article 30(b) was subsumed in the final version of the UCMJ by Article 10, UCMJ.[1]

The Presidential implementation of Article 30(b) in the Manual for Courts–Martial, United States, 1951 [hereinafter MCM, 1951] required the appellant's immediate commander to inform the accused of the charges against him [2] or, if not done by the immediate commander, by the officer exercising summary court-martial jurisdiction.[3]

---

7. We have carefully examined the record of trial for R.C.M. 707(c) exclusions. They are insufficient to reduce the delay to 120 days or less.

1. *Compare* Index and Legislative History, Uniform Code of Military Justice, at 981 with Article 30(b) and Article 10, UCMJ.

2. Paragraph 32*f*(1), MCM, 1951.

3. Paragraph 33*c,* MCM, 1951.

If the case was referred to an Article 32 investigation, the investigating officer was required to inform the accused of the charges against him.[4]

Only after the investigation, and a referral decision, would charges be wholly or partially referred to a general court-martial.[5] Practically speaking, charges were dropped or modified or additional charges added—often requiring the preferral of new charges.[6] These procedural requirements for informing the accused of the nature of the charges were substantially incorporated in the Manual for Courts–Martial, United States, 1984 [hereinafter MCM, 1984].[7]

The case law interpreting Article 30(b) and the MCM's implementation thereof preceding the MCM, 1984 thus remains viable and was certainly considered in drafting R.C.M. 308.

The primary purpose of Article 30(b) is to insure that the accused is given a *reasonable* period of time within which to prepare his defense.[8] Failure to inform the accused of the charges only entitles the accused to a continuance for time to prepare for trial.[9] Consequently, in interpreting Article 30's requirement that the accused be informed of the charges against him "as soon as practicable," the appellate courts applied a reasonable time standard between the time of preferral and advising the accused of charges.[10]

The failure to inform the accused of the charges prior to trial is not a jurisdictional defect and may be waived by a failure to object at trial.[11] Of course, it would deprive the accused of a fundamental right to deny him a reasonable period of time to prepare his defense [12] but the right to a continuance preserves this fundamental right.

Generally, when the courts have discussed Article 30(b) and its MCM implementation it was to discuss the prosecutorial discretion aspects thereof.[13]

The requirement that the commander "immediately" determine the disposition apparently was designed to preclude the saving up of charges, a concern reflected in the forerunner to the MCM, 1951 [14] and condemned in case law.[15] Strict sanctions in this area are warranted.[16]

## B

### *The Formal Presentment of Charges by the Government Commencing Speedy Trial Accountability*

The MCM, 1951 did not address speedy trial, apparently relying upon the statutory standards in the UCMJ. The military appeals courts, however, did fill that void. The Court of Military Appeals, at least as

---

4. Paragraph 34, MCM 1951.

5. Paragraph 35, MCM 1951.

6. Paragraph 32, MCM 1951.

7. Discussion, R.C.M. 306(c). *United States v. Leonard*, 20 M.J. 589, 592 (NMCMR 1985), Coughlin, Judge (dissenting).

8. *United States v. Stebbins*, 33 C.M.R. 677, 680 (CGBR 1963); *cf.* R.C.M. 308(c).

9. *Id.* A continuance was also the remedy prescribed by the Articles of War, the forerunner to the UCMJ, for a failure to provide the accused with a copy of the charges. Article 46(c), Articles of War.

10. *See United States v. Stebbins*, 33 C.M.R. at 680.

11. *United States v. Moore*, 6 M.J. 644 (NCMR 1978).

12. *United States v. Clay*, 1 U.S.C.M.A. 74, 77, 1 C.M.R. 74, 77 (1951).

13. *United States v. Ezell*, 6 M.J. 307, 317 (C.M.A. 1979); *United States v. Hawthorne*, 7 U.S.C.M.A. 286, 290 (1956), 22 C.M.R. 76, 80 (1956); *United States v. Kirsch*, 15 U.S.C.M.A. 84, 35 C.M.R. 56 (1964); *United States v. Hooks*, 2 M.J. 502 (ACMR 1976); *United States v. Duncan*, 46 C.M.R. 1031 (NCMR 1972); *United States v. Rivera*, 45 C.M.R. 582 (ACMR 1972); *United States v. Kirsch*, 34 C.M.R. 553 (ACMR 1963), *aff'd* 35 C.M.R. 56 (C.M.A.1964); *United States v. Newman*, 9 C.M.R. 604 (NCMR 1953).

14. Paragraph 26, MCM, U.S. Army, 1949.

15. *See e.g., United States v. Ortego*, 37 C.M.R. 691 (ABR 1967).

16. *Id.*

early as 1961, stated speedy trial accountability began upon the *formal presentment of charges* when the accused was not restrained prior to trial. *United States v. Williams*, 12 U.S.C.M.A. 81, 30 C.M.R. 81 (1961).

When the MCM, 1951 was revised in 1969, it considered, *inter alia*, the United States Court of Military Appeals decision in *Williams* in implementing a speedy trial paragraph within a new discussion chapter entitled *Matters of Defense*.[17] Paragraph 215*e* of the Manual for Courts–Martial, United States, (1969) [hereinafter MCM, 1969] stated as follows:

> An accused is entitled to be tried within a reasonable time after being placed under a restraint such as restriction, arrest, or confinement or after charges are preferred. See Article 10. If trial is unreasonably delayed, the accused is entitled upon timely motion to dismissal of the affected charges. Ordinarily, only the time after the inception of the accused's restraint or after the preferring of charges is considered for this purpose, and any delay in preferring charges, if the accused has not been restrained, is considered only in connection with the statute of limitations.

The MCM chapter was advisory in the "substantive" area[18] and two years after the MCM 1969 and ten years after *Williams*, 30 C.M.R. 81, the Court of Military Appeals in its landmark case of *United States v. Burton*, 21 U.S.C.M.A. 112, 44 C.M.R. 166 (1971) stated:

> On a speedy trial issue, the Government's accountability runs from the date the accused is restrained or *from the date of the "formal presentment" of charges*, whichever is earlier. *United States v. Williams*, 16 USCMA 589, 37 CMR 209 (1967), and *United States v.*

*Williams*, 12 USCMA 81, 30 CMR 81 (1961).

(Emphasis supplied).

The Court of Military Appeals and this Court continued to state that the formal presentment of charges commenced the running of the speedy trial clock in cases where no pretrial restraint had been imposed on the accused.[19]

After R.C.M. 707(a) became effective in 1984, the judicial interpretations of the interrelationship and the *difference* between informing the accused of the nature of the offense and the formal presentment of charges by the Government commencing speedy trial accountability did not change.

The Analysis to R.C.M. 707(a) states that it is based on Standards 12–2.1 and 12–2.2 of the *ABA Standards, Speedy Trial* (1978). MCM, 1984 at A21–37. Standard 12–2.2(a) states, in pertinent part, that speedy trial accountability should commence running "from the date the charge is filed." Footnote 10 of the Commentary to Standard 12–2.2(a) states that: " 'Charge' means a written statement filed with a court which accuses a person of an offense *and which is sufficient to support a prosecution; it may be an indictment.*" (Emphasis supplied). The Commentary to Standard 12–2.1, at 12–14, further notes: "Rule 722(a) of the Uniform Rules of Criminal Procedure states that the period from *information* or *indictment* to trial should be no longer than four months." (Emphasis supplied). An information is an accusation that a person committed a federal crime. It is signed by a U.S. Attorney. *Albrecht v. United States*, 273 U.S. 1, 47 S.Ct. 250, 71 L.Ed. 505 (1927). The military justice system's equivalent of the federal information is the combination of the preferral/referral of charges. *See generally* Murphy, *The Formal Pretrial Investigation*, 12 Mil.L.Rev. 1 (1961); *United States v. Allen*, 5 U.S.C.M.A. 626, 640, 18 C.M.R.

---

**17.** Analysis of Contents, Manual for Courts–Martial, United States, 1969 Revised Edition, DA Pam. No. 27–2, July, 1970, at 29–3.

**18.** *See id.* at 29–1; *United States v. Smith*, 13 U.S.C.M.A. 105, 32 C.M.R. 105 (1962).

**19.** *See United States v. Ward*, 1 M.J. 21, 23–24 (C.M.A.1975). ("presentment of formal charge"); *United States v. Kama*, 47 C.M.R. 838, 846 (NCMR 1972); *United States v. Clay*, 48 C.M.R. 334, 336 (NCMR 1973) ("formal presentment of charges"); and *United States v. Rachels*, 4 M.J. 697, 698 (NCMR 1977).

250, 264 (1955). The military equivalent of the federal indictment is composed of a number of evolutions: the Article 32 investigation; the preferral of charges; and the referral of charges.[20]

*Consequently, formal presentment of charges by the Government commences speedy trial accountability under the very standards upon which R.C.M. 707(a) is based.*

R.C.M. 308, in fact, substantially incorporated the prior MCM provisions and the prior case law regarding the requirement for informing the accused of the nature of the offense.[21] It specifically provided, in R.C.M. 308(c):

*Remedy:* The sole remedy for violation of this rule is a continuance or recess of sufficient length to permit the accused to adequately prepare a defense, and no relief shall be granted upon a failure to comply with this rule unless the accused demonstrates that he has been hindered in the preparation of a defense.

In *United States v. Gray*, 21 M.J. 1020, 1024 (NMCMR 1986), a unanimous panel of this Court stated:

In contrast to the civilian federal practice regarding charge formalization, the first "formalization" of any charge under military court-martial procedure comes with charge preferral and notification thereof to the accused. *See* R.C.M. 307 and 308. This is so because any person subject to the UCMJ can prefer charges but such preferral does not signal the *Government's* institution of formal charges.

Judge Cox of the United States Court of Military Appeals, concurring in the result in an opinion by Judge Sullivan which affirmed this Court on other grounds, reiterated a portion of this Court's opinion in *Gray* as follows:

Judge Mitchell, writing for the Court of Military Review, made this important point which is worth repeating:

[T]he first "formalization" of any charge under military court-martial procedure comes with charge preferral and notification thereof to the accused. *See* R.C.M. 307 and 308. This is so because any person subject to the UCMJ can prefer charges but such preferral does not signal the *Government's* institution of formal charges.

*United States v. Gray*, 26 M.J. 16, 22–23 (C.M.A.1988).

In *United States v. Maresca*, 26 M.J. 910 (NMCMR 1988), where counsel for the Government gave a copy of the preferred charges to the defense counsel on 27 May 1986 and, by doing so, "did not intend that by providing a copy to the defense counsel that the accused be notified," a panel of this Court noted that the R.C.M. 707 clock began on *12 June 1986* when the Article 32 pretrial investigating officer notified him of the charges.

In *Maresca*, 26 M.J. at 915, this Court stated:

We reject the notion that delivery of the charge sheet to trial defense counsel *in this case* effected a proper notification of charges to the accused under R.C.M. 308. Speedy trial accountability does not begin until charges are formalized by notification *to an accused* under R.C.M. 308. *See* R.C.M. 707(a). Notification under the military speedy trial rules is of particular importance because of the fact that "any person subject to the UCMJ can prefer charges but such preferral does not signal the *Government's* institution of formal charges." *United States v. Gray*, 26 M.J. 16, 23 (C.M.A. 1988) (Cox, J., concurring). It is the act of notification that formally signals the Government's institution of charges. Of necessity, such can only be accomplished by a *formal* act by the Government evincing the intent to prosecute and can-

---

**20.** Any similarity between this discussion comparing military and federal procedure and the discussion regarding Rule 7 of the Federal Rules of Criminal Procedure in the *Comparative Analysis, Federal Rules of Criminal Procedure and Military Practice and Procedure,* Committee on Criminal Justice and the Military, Section of Criminal Justice, American Bar Association, 14–15 (1982) is no coincidence, as the undersigned authored that analysis.

**21.** *See* Analysis, Appendix 21, Manual for Courts–Martial, United States, 1984, at A21–20.

not be reduced to an informal act of notice to a third-party whereby the Government simply relies on that person to inform the accused.

This Court then added a footnote to this paragraph as follows:

Because an accused is protected from the effects of excessive delay between the acts of preferral and notification by the provisions of R.C.M. 308, we can see no benefit to expanding the concept of notification to include notice to one other than the accused. Not only would an expansion of the notice rule encourage needless inquiries into exactly when an accused or his counsel or some other unspecified third party was "notified" about the charges preferred, but it would also add an unnecessary element of uncertainty into the otherwise mechanical provisions of R.C.M. 707. Additionally, such an expansive reading under the facts in this case would defeat the obvious intent of the President to remedy "pre-notice" delay via the prejudice oriented provisions of R.C.M. 308 rather than the mechanical dismissal rules embodied in Rule 707.

Footnote 5, *id.*

*Thomas v. Edington,* 26 M.J. 95 (C.M.A. 1988) is a *per curiam,* one and one-third page opinion, decided on 1 April 1988, by the United States Court of Military Appeals in response to a Petition for Extraordinary Relief in the Nature of a Writ of Mandamus and an Order to Show Cause issued by our Superior Court on 16 March 1988.

The facts related in *Thomas v. Edington* are understandably sparse, given the nature of the situation (an extraordinary writ) and our responsibility as appellate courts to treat such petitions with dispatch. The summary of facts that are pertinent to the actual *holding* of the case are these:

On or about July 17, 1987, Charges I, II, and III were *preferred* against the accused. Thereafter, on or about September 2, 1987, Additional Charge I was *preferred.*

No other facts related in *Thomas v. Edington* are relevant to the holding [22] in that case because the Court disposes of the case in this manner:

We conclude and hold that petitioner was "notified" of Charges I, II, and III *on or before* July 31, 1987, and that more than 120 days elapsed prior to this trial, without legal justification for the delay.

The Court, after dismissing the charges, then stated:

We do not base our decision upon constitutional notions of speedy trial, but simply upon the plain language of R.C.M. 707 and 308; Article 30 of the Uniform Code of Military Justice; and the undisputed facts of this case—that petitioner, indeed, received actual "notice" of the charges against him.

*Thomas v. Edington,* 26 M.J. at 95–96.

## II

### Analysis

In 1961, the United States Court of Military Appeals, when looking for an event

[22] In dictum, the Court stated:

Block 12 of the Charge Sheet, DD Form 458, which indicates the date that an accused is "informed of the charges against him/her," has not been completed on the charge sheet before us, notwithstanding the requirement of R.C.M. 308, Manual for Courts–Martial, United States, 1984, that an accused shall be so "informed ...as soon as practicable." Art. 30(b), UCMJ, 10 U.S.C. s. 830(b).

Petitioner asserts that it is the policy of some commands of the Naval Service to ignore the plain statutory language of Article 30, which clearly and unequivocally provides that "the person accused shall be informed of the charges against him as soon as practicable" by the device of deliberately not notifying an accused of the charges until such time as the prosecution and the convening authority have made a decision to prosecute. It is alleged that this policy is designed to delay the trigerring mechanism of the speedy-trial requirements contained in R.C.M. 707(a), which demand that an accused be brought to trial within 120 days after "[n]otice to the accused of preferral of charges under R.C.M. 308."

It is clear to us that R.C.M. 707, as promulgated by the President of the United States, must be read in conjunction with Article 30 and R.C.M. 308. It is also clear that the language "as soon as practicable" modifies and relates to the date charges are preferred—not to some later date such as the date that the convening authority makes a decision to prosecute. However, we need not decide this case based upon the *alleged* Navy policy.

which was a parallel to the civilian standard looked towards the preferral of charges. But, where Government accountability for speedy trial in a civilian criminal trial only began when the Government had made a decision to prosecute, military preferral could be done by anyone subject to the UCMJ, who may, or may not be, acting in a government capacity.[23] Consequently, when the Court of Military Appeals looked towards preferral as a time to determine the Government's accountability, it *added* the words *formal presentment of charges by the Government.* This meant that, at least since 1961 to the present, in situations where a suspect has not been restrained prior to trial, separate standards would be looked at in determining if he or she has been informed of the nature of the charges and afforded a speedy trial.

As this has been the approach of our Courts in this area for over a quarter of a century, it is fair to presume the drafters of the MCM 1984 considered the prior case law in drafting R.C.M. 707(a). Further, the *ABA Standards, Speedy Trial* (1978), and the Uniform Rules of Criminal Procedure (referred to within the Standards), upon which the drafters stated they relied, start the Government's accountability for a speedy trial when the Government institutes formal charges. Indeed, any other interpretation of RCM 707(a) would result in inappropriate dismissals in the trial of those cases in which careful handling is mandatory: the most serious and difficult cases tried within the military justice system. I will not assume that the drafters of the MCM, 1984 planted seeds of unreasonableness that will result in a "bitter harvest" of dismissals.

Dismissals under such circumstances are an unconscionable penalty to pay for dictum in *Thomas v. Edington*, 26 M.J. at 96, especially if in issuing its *per curiam* opinion the Court intended its dicta to be "unexceptional." *See* George, *Judicial Opinion Writing Handbook*, 103 (2nd ed.

1986). Stating that R.C.M. 707 "must be read in conjunction with Article 30 and R.C.M. 308," *Thomas v. Edington*, 26 M.J. at 95, is nothing new. They are already interrelated. Further, stating that "as soon as practicable" relates to the date charges are preferred is also nothing new. Further, we are not addressing a situation in which there was a demand for a speedy trial, or in which there is any prejudice to the accused. There is no unreasonable prepreferral delay in this case. *See United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); *United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977).

R.C.M. 707(a) is an Executive Order of the President. The President could only have implemented R.C.M. 707(a) with the intention that it would continue to permit the system to function speedily but not with such dispatch that the accused who commits the more serious offenses within the system would receive a windfall: dismissal of charges under standards so stringent that justice would not prevail.

A suspect has Constitutional and statute of limitations protections which are available when he or she is not in pretrial restraint. R.C.M. 707(a) offers, in different language, precisely the ideal contained in Rule 722(a) of the Uniform Rules of Criminal Procedure: that is, the period from information or indictment to trial should be no longer than four months. The threshold of justifiable interest for any military member being entitled to any further expanded interpretation of R.C.M. 707(a) is nonexistent. Only when the Government has determined to prosecute a case does the suspect become entitled to a speedy trial in nonrestraint situations. This is fair both for the Government and the accused.

### III

#### Conclusion

In this case, when the accused's defense counsel was provided a copy of the charges

---

**23.** The power of anyone subject to the UCMJ to prefer charges is a unique, beneficial force in our system, which, while not often used in practice, enables the system to right itself in a great variety of unique situations: "whistle-blowing;"

to counteract administrative paralysis in highly publicized cases; and other situations in which the military justice system requires flexibility to prevent injustice.

pursuant to an anticipated Article 32 investigation (which the accused eventually waived), trial counsel may well have complied with Article 30(b) and R.C.M. 308 for this did permit defense preparation for a possible trial. But, sending a case to an Article 32 *investigation* is a decision to investigate, not to prosecute. There was no formal presentment of charges which signalled the Government's decision to prosecute until May 1, 1987.

I would affirm the findings and sentence as approved on review below.

Judge McLERAN took no part in the consideration or decision of this case.