**UNITED STATES, Appellee,**

v.

**Louis D. MARESCA, Chief Warrant Officer, U.S. Navy, Appellant.**

No. 60,824.

NMCM 87 0006.

U.S. Court of Military Appeals.

July 24, 1989.

For Appellant: *Lieutenant Commander L. Saccoccio, JAGC, USN* (argued); *Michael L. Sandul, Esq.* and *Major J.L. Powers, USMC* (on brief); *Major J.B. Gilbert, USMC.*

For Appellee: *Lieutenant Commander L. Friedman, JAGC, USN* (argued); *Captain Wendell A. Kjos, JAGC, USN* (on brief); *Lieutenant Rick D. Bastien, JAGC, USNR.*

*Opinion of the Court*

COX, Judge:

This is another case in which an accused seeks dismissal of charges against him because the Government did not bring him to trial within 120 days.[1] *See* RCM 707(a), Manual for Courts–Martial, United States, 1984. We granted two issues for review. The issues, as framed by appellant, are as follows:

I

WHETHER THE GOVERNMENT'S ACCOUNTABILITY FOR TIME PURSUANT TO RULE FOR COURT–MARTIAL 707 BEGAN ON THE DATE THE GOVERNMENT REPRESENTATIVE DELIVERED THE PREFERRED CHARGE SHEET TO THE APPELLANT'S DEFENSE COUNSEL WHO, IN TURN, INFORMED THE APPELLANT OF THE NATURE OF THE CHARGES AGAINST HIM, AND THE IDENTITY OF HIS ACCUSER, ALTHOUGH THE GOVERNMENT REPRESENTATIVE'S UNEXPRESSED INTENTION WAS NOT TO HAVE THE APPELLANT SO NOTIFIED AND FOR THE EXPRESS PURPOSE OF DELAYING THE BEGINNING OF SUCH ACCOUNTABILITY.

II

WHETHER THE MILITARY JUDGE PROPERLY EXCLUDED THE TIME PERIOD OF A GOVERNMENT REQUESTED CONTINUANCE FROM ACCOUNTABILITY UNDER RULE FOR COURT–MARTIAL 707 FOR THE PURPOSE OF ALLOWING THE GOVERNMENT THE OPPORTUNITY TO PRESENT THE TESTIMONY OF TWO WITNESSES WHEN ALTERNATIVE FORMS OF PRESENTING THE TESTIMONY OF THE WITNESSES EXIST-ED, THE GOVERNMENT HAD PREVIOUSLY INDICATED ITS WILLINGNESS TO USE THE ALTERNATIVE FORMS OF TESTIMONY, AND THE NECESSITY FOR REQUESTING THE CONTINUANCE WAS A DIRECT RESULT OF THE GOVERNMENT'S ACTIONS.

I

 The first issue questions whether the prosecution's accountability for speedy trial commenced when appellant was unofficially informed of the charges by his own attorney. On May 27, 1986, charges were *preferred* against appellant. *See* RCM 307. On that same day, a copy of the charge sheet was given by trial counsel to appellant's defense counsel, who had already been appointed to represent appellant on the charges. Later that day, defense counsel discussed the charges with appellant.

On June 12, 1986, a pretrial investigation commenced pursuant to Article 32, Uniform Code of Military Justice, 10 USC § 832, and appellant was readvised of the charges against him by the investigating officer. Block 12 of the charge sheet (the space used to record the date an accused is formally notified of charges) was not completed until July 18, 1986. *See* chronology at 26 MJ 910, 912–13.

Resolution of this issue involves interpretation of several provisions of the Uniform Code and the Manual for Courts–Martial. The requirement that an accused be *notified* of charges is statutory. Article 30(b), UCMJ, 10 USC § 830(b), provides:

Upon the preferring of charges, the proper authority shall take immediate steps to determine what disposition should be made thereof in the interest of justice and discipline, *and the person accused shall be informed of the*

1. Contrary to his pleas, appellant was convicted by a general court-martial of two specifications of larceny and one of forgery, in violation of Articles 121 and 123, Uniform Code of Military Justice, 10 USC §§ 921 and 923, respectively. He was sentenced to dismissal from the Navy, confinement for 5 months, and forfeiture of $400 pay per month for 5 months. The convening authority approved the sentence, and the Court of Military Review affirmed. 26 MJ 910 (1988).

*charges against him as soon as practicable.*

(Emphasis added.)

RCM 308(a) implements this requirement as follows:

> The immediate commander of the accused shall cause the accused to be informed of the charges preferred against the accused, and the name of the person who preferred the charges and of any person who ordered the charges to be preferred, if known, *as soon as practicable.*

(Emphasis added.)

"Practicable" is defined as "[c]apable of being done: FEASIBLE," *Webster's II: New Riverside University Dictionary* 923 (1984); "capable of being put into practice, done, or accomplished: FEASIBLE," *Webster's Third New International Dictionary* 1780 (Unabridged, 1981).

The speedy trial implications of notice are based on RCM 707(a), which provides:

> The accused shall be brought to trial within 120 days after the earlier of:
>
> (1) Notice to the accused of preferral of charges under R.C.M. 308. . . .

Determining the date "notice" has been effected has proved to be a problem for the naval service. *See United States v. Voyles,* 28 MJ 831 (NMCMR 1989); *United States v. Angel,* 28 MJ 600 (NMCMR 1989) (*en banc*). Indeed it was alleged in *Thomas v. Edington,* 26 MJ 95 (CMA 1988), that the Navy had a deliberate policy of not notifying an accused of charges in order to delay commencement of the 120–day rule.

Because willful or deliberate withholding of notification is a clear violation of Article 30(b)—and probably Article 98, UCMJ, 10

USC § 898 [2]—we declined in *Thomas* to impute such a sinister and unlawful motive to the Government.[3] Nevertheless, we made it

> clear that the language "as soon as practicable" modifies and relates to the date charges are preferred—not to some later date such as the date that the convening authority makes a decision to prosecute.

26 MJ at 95.

■ In *United States v. Angel, supra,* the Court of Military Review, believing that *Thomas* had created an *"actual-notice"* test, found such actual notice in the circumstance of delivery "of the preferred charges to appellant's defense counsel who foreseeably shared this information with his client in order to prepare for the impending investigation." 28 MJ at 604. Chief Judge Byrne, dissenting in that case, would have held that speedy-trial accountability based on notice was triggered only by a *"formal presentment of charges by the Government." Id.* at 607.

In the instant case, Judge Cassel, writing for a majority of the panel, rejected the *"de facto"* or actual-notice test; instead he tried to fashion a rational, middle ground in which accountability was triggered by *any* governmental action, so long as it involved direct notification of an accused. He reasoned as follows:

> It is the act of notification that formally signals the Government's institution of charges. Of necessity, such can only be accomplished by a *formal* act by the Government evincing the intent to prosecute and cannot be reduced to an informal act of notice to a third-party whereby the Government simply relies on that person to inform the accused. Given its

*See also United States v. Maresca,* 26 MJ 910, 917 n.10 (NMCMR 1988); *cf. United States v. Boldon,* 17 MJ 1046, 1052 (NMCMR), *pet. denied,* 19 MJ 21 (CMA 1984).

---

**2.** Article 98 provides:

> Any person subject to this chapter who—
>
> (1) is responsible for unnecessary delay in the disposition of any case of a person accused of an offense under this chapter; or
>
> (2) knowingly and intentionally fails to enforce or comply with any provision of this chapter regulating the proceedings before, during, or after trial of an accused;
>
> shall be punished as a court-martial may direct.

**3.** Appellee suggests that the short opinion in *Thomas v. Edington,* 26 MJ 95 (CMA 1988), "does not provide guidance for resolution of the instant case." Sometimes, however, what is not written in an opinion is more important than what is.

significance in the military justice process, notification to the accused under RCM 308 must be just that—*to the accused* and not to a third party attorney. . . .

26 MJ at 915 (footnotes omitted).

Thus, the majority below concluded that neither delivery of the charges to defense counsel nor counsel's conversations with appellant constituted the requisite act of notification. However, the majority view is that the June 12 notification by the Article 32 officer was sufficient to trigger speedy-trial accountability. 26 MJ at 916. The 16–day delay between May 27 and June 12 was discounted as being "reasonable and in no way contraven[ing] the requirement set forth in RCM 308 that notification of charges occur[s] 'as soon as practicable.' " *Id.* at 917. The holding appears to be in conflict with that of *United States v. Angel, supra.*

We agree with Chief Judge Byrne in *Angel* and Judge Cassel in this case that notification was probably contemplated as being a somewhat formal event, and most certainly an intentional one. We also agree wholeheartedly with the court below that the Government cannot manipulate notification in order to circumvent speedy-trial rules. 26 MJ at 917. We do not, however, agree that the language "as soon as practicable" affords the Government some lengthy period of time to reflect upon existing charges. It is almost impossible to create a "bright-line" rule to construe the meaning of "as soon as practicable." [4] We know, however, that the ideas incorporated into Article 30 were not recent congressional inventions, but have long been fixtures of military justice.[5] Given this historical practice and the plain language of Article 30(b), we are satisfied that both the Article and RCM 308 must be construed to require that the immediate commander notify an

---

**4.** We note that the 120–day rule is not a court-made rule. Rather, it was adopted in the Manual for Courts–Martial, United States, 1984, and was "intended to protect the speedy-trial rights under the Sixth Amendment and Article 10[, UCMJ, 10 USC § 810,] and to encourage protection of command and societal interests in prompt administration of justice." Analysis to RCM 707, Manual, *supra* at A21–36. In a recent decision, *United States v. Carlisle,* 25 MJ 426 (CMA 1988), we discussed the ethical responsibility imposed upon government counsel to get an accused to trial. We observed that *"ON DAY NUMBER 1, EVERYONE . . . SHOULD KNOW WHAT DAY WILL BE NUMBER 120." Id.* at 428. In the instant case, the Government's sarcastic and inexplicable response to this observation is that "it is difficult to know when day 120 will be if it is unknown when day 1 was." (Brief at 6.) Block 12 of the Charge Sheet was designed to memorialize this important event. It has a space for a date. If the immediate commander had obeyed the law, day 1 would be crystal clear.

**5.** According to W. Winthrop, *Military Law and Precedents* 157 (2d ed. 1920 Reprint), the Articles of War ordinarily required that officers be served with charges "within eight days after the arrest," and

in all cases, whether of officers or soldiers, the interests of justice and of military discipline unite in requiring that charges should in general be served either simultaneously with the arrest, or as soon after arrest as is reasonably practicable.

Similarly, the Forty-third Article for the Government of the Navy provided:

The person accused shall be furnished with a true copy of the charges, with the specifications, at the time he is put under arrest; and no other charges than those so furnished shall be urged against him at the trial, unless it shall appear to the court that intelligence of such other charge had not reached the officer ordering the court when the accused was put under arrest, or that some witness material to the support of such charge was at that time absent and can be produced at the trial; in which case reasonable time shall be given to the accused to make his defense against such new charge.

*Naval Courts and Boards* 467 (1937).

In his informative book, *Military Law* 16–18 (3d ed.1981), Captain Edward M. Byrne, JAGC, USN, relates the story of Acting Midshipman Philip Spencer—considered by some to be Melville's inspiration for *Billy Budd*—and two of his shipmates, who were tried for mutiny aboard the USS SOMERS in November of 1844. "The prisoners," notes Judge Byrne, "were not brought before the officers, nor did they know they were being tried." Upon being found guilty, "[t]he three were then hanged to the roll of drums and the thunder of cannon, as prescribed in the commander's watch bill." *Id.* at 18.

It should be obvious that no one is urging a return to a system that does not give an accused notice of the charges against him.

accused of the charges as soon after they have been preferred as the accused can reasonably be found and informed thereof.

We do not believe this places too onerous a burden on trial counsel in any branch of service. Typically, charges are not preferred until there has been a good deal of discussion between commanders, command legal officers, judge advocates, and investigators.[6] In those rare cases where one member of a service charges another with crime, without benefit of legal advice, the accused is still entitled to know about the charges "as soon as practicable."[7]

Applying these principles to the facts of this case, we hold that, as a matter of law, appellant was entitled to be notified of the charges on May 27, the day charges were preferred and opportunity for notice was apparent. "Equity looks upon that as done which ought to have been done." *Black's Law Dictionary* 485 (5th ed.1979). The speedy-trial clock began to run on that day.

## II

Before the speedy-trial clock was stopped, however, by "[p]resentation ... of evidence on the merits," RCM 707(b)(3)(B), the Government moved for a continuance of 13 days because two of its witnesses were unavailable. If the 13–day delay is discounted, the case was brought to trial within 120 days.[8] In ruling on the motion, the military judge found the witnesses' testimony "to be relevant and necessary," and he opined that "[t]he availability of depositions does not destroy the relevance or the necessity of the testimony of these witness-

es." Therefore, he granted the continuance.

The judge's ruling was predicated on the language of RCM 707(c)(5), which provides:

The following periods shall be excluded when determining whether the period in subsection (a) of this rule has run—

\* \* \* \* \* \*

(5) Any period of delay resulting from a delay in the Article 32 hearing or a continuance in the court-martial at the request of the prosecution if:

(A) The delay or continuance is granted because of unavailability of substantial evidence relevant and necessary to the prosecution's case when the Government has exercised due diligence to obtain such evidence and there exists at the time of the delay grounds to believe that such evidence would be available within a reasonable time. . . .

Senior Judge Ferguson, writing for this Court, advocated:

We believe that many of the problems involved in attributing pretrial delays will be ameliorated if all such requests for delay, together with the reasons therefor, were acted upon by the convening authority prior to referral of charges to a court-martial, or by the trial judge after such referral, rather than for them to be the subject of negotiation and agreement between opposing counsel. This procedural requirement will establish as a matter of record who requested what delay and for what reason.

---

6. In military jurisprudence, "preferral of charges" is the "critical stage of the proceedings" which signals the attachment of an accused's "Sixth Amendment right to counsel." *United States v. Wattenbarger,* 21 MJ 41, 43–45 (CMA 1985), *cert. denied,* 477 U.S. 904, 106 S.Ct. 3272, 91 L.Ed.2d 563 (1986). The right to counsel would be a hollow right indeed if an accused did not even know what charges were placed against him and by whom.

7. We recognize that a unique feature of the Uniform Code of Military Justice is that any member subject thereto can prefer charges against another member. Article 30(a), UCMJ, 10 USC § 830(a). Even here, the commander

must find and notify the accused of the existence of charges "as soon as practicable." Art. 30(b). Frivolous or vexatious charges sworn out under this provision can readily be disposed of by appropriate commanders, without speedy-trial prejudice to legitimate prosecutorial interests. RCM 306 and 707(b)(2). There is no excuse for delay written into Article 30(b).

8. In such a case (as here) it would literally be "unnecessary to decide whether the 120–day clock was triggered on" May 27 or June 12, 1986, as Judge Gladdis, concurring in the result, observed below. 26 MJ at 919.

*United States v. Schilf*, 1 MJ 251, 253 (CMA 1976).

Although we have urged that this prospective practice be followed, the services have not chosen to adopt this simple procedural rule. *See United States v. Carlisle*, 25 MJ 426, 428 (CMA 1988); *United States v. Burris*, 21 MJ 140, 145 (CMA 1985). Instead, RCM 707 catalogs a set of principles to be applied after-the-fact to determine accountability for various events. Further, the rule has either been amended or changes have been proposed to respond to almost every ruling made by a court which seemed to go against the Government.

Notwithstanding the lack of a general rule, trial counsel made a timely, prospective application to the military judge for a continuance (and exclusion of time) under the "unavailable witness" rule. RCM 707(c)(5). The motion was considered in an adversarial setting, with each party having an opportunity to be heard.

 A military judge's decision to grant or deny a continuance is a matter of discretion, based upon facts and circumstances then and there existing. *See United States v. Browers*, 20 MJ 356, 360 (CMA 1985). We review such rulings on the basis of "whether those findings are 'fairly supported by the record.'" We will not disturb such a factual determination "unless it is unsupported by the evidence of record or was clearly erroneous." *United States v. Burris, supra* at 144, quoting *United States v. Middleton*, 10 MJ 123, 133 (CMA 1981).

Here, the military judge's ruling is fully supported by the record; therefore, we have no occasion to upset it. Moreover, the ruling comports with the view we have often expressed concerning the importance of the presence of witnesses. *See United States v. Burns*, 27 MJ 92 (CMA 1988); *United States v. Vanderwier*, 25 MJ 263 (CMA 1987); *United States v. Cokeley*, 22 MJ 225 (CMA 1986). Accordingly, the 13-day period was properly excluded from government accountability, and the 120-day speedy trial rule was not violated.

The decision of the United States Navy-Marine Corps Court of Military Review is affirmed.

Chief Judge EVERETT and Judge SULLIVAN concur.