**UNITED STATES**

v.

**Harry D. LEAMER, Chief Warrant Officer (W–3), U.S. Coast Guard.**

**CGCM 0014.**
**Docket No. 913.**

U.S. Coast Guard Court of Military Review.

20 Sept. 1989.

Military Judge: Cdr. Richard L. Maguire, USCG.

Trial Counsel: L.Cdr. Carl V. Mosebach, USCG.

Defense Counsel: Lt. N.E. Grasselli, USCG.

Appellate Government Counsel: L.Cdr. Michael J. Devine, USCG.

Appellate Defense Counsel: L.Cdr. James Collin, USCG.

Before PANEL ONE BAUM, BRIDGMAN and JOSEPHSON Appellate Military Judges.

BAUM, Chief Judge:

Appellant, after pleading not guilty, was convicted by a general court-martial, judge alone, of one specification of signing a false official record with intent to deceive,

in violation of Article 107, Uniform Code of Military Justice, 10 U.S.C. § 907 and one specification of larceny of more than $100.00, the property of the United States Coast Guard Buffalo, New York, Exchange, in violation of Article 121, Uniform Code of Military Justice, 10 U.S.C. § 921. Appellant was sentenced to a dismissal from the U.S. Coast Guard, confinement for six months and a fine of $2,000.00. The convening authority approved the sentence but suspended for eighteen months the dismissal and confinement in excess of four months. Before this Court, appellant has assigned one error, that he was denied his right to a speedy trial. Specifically, appellant asserts a violation of Rule for Courts–Martial 707, which requires trial within 120 days after notice to the accused of the preferral of charges.

That issue was raised at trial by a motion for dismissal, which the judge denied, finding that the period accountable to the government from notification of preferred charges to trial to be less than 120 days. In so ruling, the judge concluded that the time from 4 November 1987 to 1 December 1987, when the trial commenced, should be excluded from computation of the 120 days under RCM 707 because of the accused's request for a continuance for that period. We agree with the judge's determination in this regard and appellant, too, has not challenged the exclusion of that period from the speedy trial decision. Instead, appellant contends that computation of the 120 days should have commenced on a date earlier than the formal notification to him of preferred charges as reflected in block 12 of the charge sheet. In so doing, he makes several arguments in support of earlier commencement dates in light of the facts in this case.

Those facts reveal that appellant was the Exchange Officer at Coast Guard Group, Buffalo, New York on 8 April 1987 when a surprise audit of the Exchange was held. Based on discrepancies noted, an investigation was ordered and appellant was so advised on 9 April 1987. Thereafter, on 27 April 1987, while that investigation was continuing, appellant was relieved of duties as Exchange Officer and told, on 29 May 1987, to report for an indefinite period of time to the Ninth Coast Guard District Office in Cleveland, Ohio. Complying with those orders, appellant reported there on 1 June 1987, for temporary additional duty. On 5 June, the final audit of the Exchange was signed and on 19 June the completed investigation conducted by the Ninth District operational law enforcement branch was approved. Thereafter, in late June, charges against appellant were drafted by an attorney in the Ninth District Legal Office. They were discussed with personnel at Group Buffalo, and on 29 June 1987 the charge sheet was signed and sworn to by a Lieutenant Junior Grade at Group Buffalo as accuser. Those preferred charges were then forwarded to Commander, Ninth Coast Guard District by letter of 1 July 1987 from Commander, U.S. Coast Guard Group Buffalo with the request that the accused be informed of the charges preferred against him. (Appellate Exhibit IX). The letter was address coded for delivery to the district legal office and the date stamp on the letter reflects receipt in that office on July 6, 1987.

The prospective trial counsel, who had drafted the charges, reviewed the charge sheet and, based on that review, prepared new charges which were signed and sworn to by the same accuser on 8 July 1987 and, as before, forwarded to the Ninth District by Commander, Group Buffalo on 8 July 1987. These charges were received in the legal office on July 13, 1987 and reviewed by another law specialist, who ultimately prosecuted the case, the originally designated prosecutor having been unexpectedly transferred. Based on this review, a new charge sheet with additional charges was prepared and signed on 5 August 1987 by a new accuser. Again, the charges were returned to Cleveland and received on August 13, 1987. However, according to a stipulation of fact, "because the oath was not dated, those charges were returned and properly (sworn) on 14 August 1987." Finally, the accused was formally notified of those charges on 20 August 1987 by an officer at Ninth Coast Guard District and block 12 of the charge sheet was completed

signifying that the accused had been so informed pursuant to Rule for Courts–Martial 308(a).

Based on these facts, appellant contends that the government deliberately delayed notifying him of preferred charges in order to manipulate the speedy trial rules and, in so doing, violated RCM 308, which requires notification of preferred charges as soon as practicable. We disagree. There is no indication from the facts of record that the rewriting of the charges, with the resultant delay in informing the accused, was for any purpose other than to perfect drafting of the allegations. Accordingly, we expressly find that the time taken until the accused was informed of the preferred charges on 20 August 1987 was not for the purpose of manipulating the speedy trial rules.

Appellant next contends that he was actually informed of the charges at some earlier date. He says that from 9 April 1987, when he was called into the Deputy Commander's office and told he was being investigated for financial irregularities in the Exchange, he believed he would be charged with crimes. That supposition was reinforced by his relief from duties as Exchange Officer on 27 April 1987. Thereafter, in May 1987, when he was transferred to the district office and also told that a certain lawyer at the district would act as his defense counsel, he says that court-martial activity appeared certain. For this reason, he believes the government's accountability for speedy trial purposes should have started then. We have no hesitation rejecting this assertion. Despite appellant's declared certitude that there would be charges, the fact remains that the preliminary investigation was continuing during this period and charges had not been preferred. There is absolutely no authority for commencing the 120 day speedy trial clock on the basis of an accused's belief that he would be charged at a time when there are no preferred charges and the matter is still under preliminary investigation. Accordingly, we reject any asserted starting time for Rule for Courts–Martial 707 prior to the actual preferral of charges.

At the latest, appellant submits that the 120 days started to run on 2 July 1987, when he saw a copy of the first charge sheet on a visit to his parent command. In this regard, appellant testified that he was in the process of selling his house in Buffalo and was "going back and forth to check on my possessions, get my paycheck and get my mail". (Record of Trial at page 21). Most week-ends he went back to Buffalo for these purposes, including the 4th of July week-end, arriving on Thursday, 2 July. Upon arrival, he went to his old unit to pick up personal mail. While there, he ran into the Deputy Commander and visited with him briefly in the Deputy's office. Appellant stated that he saw a copy of a charge sheet with the accuser's name on it in a basket on the Deputy Group Commander's desk. The Deputy Commander testified on this subject also and his testimony was unequivocal, that he did not show any charge sheet to appellant nor did he inform appellant of preferred charges. From this testimony, we conclude that any viewing would have been inadvertent. Appellant contends that, notwithstanding the Deputy Commander's intentions in this regard, his seeing the charges on 2 July 1987 constituted actual notice under the terms of *Thomas v. Edington*, 26 M.J. 95 (CMA 1988) and that more than 120 days elapsed from that date until trial, necessitating dismissal of the charges. *Thomas v. Edington*, must now be read in the context of the Court of Military Appeals' most recent opinion on the subject, *United States v. Maresca*, 28 M.J. 328 (CMA 1989), which appellant has cited in a supplemental filing.

In *Maresca, supra,* the Court of Military Appeals appears to reject the "actual notice" interpretation of *Thomas v. Edington, supra,* as expressed by an en banc Navy–Marine Corps Court of Military Review in *United States v. Angel*, 28 M.J. 600 (NMCMR 1989). Instead, Judge Cox speaking for the Court, said, "[w]e agree with Chief Judge Byrne [dissenting] in *Angel* and Judge Cassel in this case [*U.S. v. Marseca*, 26 MJ 910 (NMCMR 1989)] that notification was probably contemplated as

being a somewhat formal event, *and most certainly an intentional one.*" (Emphasis added) *United States v. Maresca*, 28 MJ at 331. Following this reasoning, we find that the unintentional sighting of a copy of the charge sheet by the accused sometime during a visit to Coast Guard Group Buffalo over the 4th of July weekend does not constitute notification of preferred charges under Article 30(b), Uniform Code of Military Justice, 10 U.S.C. § 830(b) and Rule for Courts–Martial 308(a).

The formal, intentional notification to the accused is reflected in block 12 of the charge sheet as 20 August 1987. Under the terms of *United States v. Maresca, supra*, that date would certainly qualify for commencement of the 120 days under Rule 707, if the extensive discussions and redrafting of charges had all occurred before the charges were ever sworn to and signed by the accuser, which, as Judge Cox indicated in *Maresca, supra*, occurs typically before preferral of charges. However, as detailed above, in this instance charges were redrafted and transmitted between commands *after* the original charges were preferred, a practice which is not uncommon in the Coast Guard, where commanding officers of units not having law specialists attached have the authority to convene Special Courts–Martial. Under the circumstances, while the discussions and redrafting occurred after preferral rather than before, there appears to have been a good faith effort to comply with RCM 308, with proper certification of the required notification on the charge sheet. Thus, the facts here are in distinct contrast to those in *Thomas v. Edington*, supra, and *U.S. v. Maresca*, supra.

In *Thomas v. Edington*, certification in block 12 of the charge sheet was never accomplished. In *U.S. v. Maresca* that record of formal notification was completed, but not until a month after the Article 32 investigating officer had notified the accused, upon commencement of that investigation. Perhaps, any guidance provided by these two cases should be limited to situations where judges must determine a notification date in the absence of proper certification on the charge sheet. The following words from Judge Cox would certainly tend to support this view: "Block 12 of the Charge Sheet was designed to memorialize this important event. [notification to the accused of preferred charges] It has a space for a date. If the immediate commander had obeyed the law, day 1 would be crystal clear." Footnote 4, page 331 *Maresca*.

Reading *Maresca* in this manner, as strictly limited to its facts, we would agree with the trial judge's commencing the 120 day computation upon formal notification as reflected in block 12 of the charge sheet. The possibility of *Maresca's* broader application, however, prompts us to judicially determine an earlier date that squarely comes within the following language from that opinion: "[B]oth ... Article [30(b), Uniform Code of Military Justice] and RCM 308 must be construed to require that the immediate commander notify an accused of the charges as soon after they have been preferred as the accused can reasonably be found and informed thereof." *Id.* at 331–332.

Commander, Coast Guard Group, Buffalo, attempted to do just that by forwarding the preferred charges to the command where the accused was assigned for temporary additional duty, with the request that the accused be informed of those charges. As indicated earlier, that letter, with the first set of preferred charges attached, was received at Ninth Coast Guard District legal office in Cleveland, Ohio on 6 July 1987. There is no indication in the record as to what time on the 6th that letter was received in the legal office or where the accused may have been at that particular time. Accordingly, we do not believe it unreasonable to allow the responsible personnel in that office at least one day to find the accused and inform him of the sworn charges. For that reason, pursuant to the above noted quote from *U.S. v. Maresca*, supra, we find that, in the normal course of events, 7 July 1987 would be the earliest date that the accused could reasonably be found and informed of the preferred charges in accordance with RCM 308 and Article 30(b), UCMJ.

Left for consideration, however, is whether R.C.M. 308 *required* the Deputy Group Commander Buffalo to notify the accused of the charges at the time of his unofficial visit on 2 July. As previously noted, on 2 July the accused was on temporary additional duty, assigned to the staff of Commander, Ninth Coast Guard District, creating some question as to who was his immediate commander, in the sense of RCM 308(a). Taking what we perceive to be a practical approach, the Group Commander had, on 1 July 1987, taken action to comply with R.C.M. 308 by forwarding the charges to the accused's temporary additional duty command with a request that the accused be formally notified.[1] Having taken this action, we believe that it would have been inappropriate for the Deputy Group Commander to countermand this request by formally notifying the accused of the charges on the occasion of an unofficial visit. Even if the Deputy Group Commander retained the authority to effectuate a formal notification, we do not find that he was required to do so, especially when there was no reason to believe that it was necessary to seize this opportunity or risk substantial delay. For these reasons, the 2 July 1987 date, when the accused casually dropped in on the Deputy Group Commander, is rejected as the commencement date required by Judge Cox's earlier quoted interpretation of the term "as soon as practicable" in RCM 308 and Article 30(b).

As a result of the above analysis, we will compute the 120 days required by RCM 707 from 7 July 1987. In so doing, we have measured the time until 3 November 1987, the last day for which the government was accountable, as found by the trial judge, and find that the 120 day rule was thereby satisfied.

In view of our resolution of the issues raised by appellant, we have found no need to address a number of troubling aspects of RCM 707 and court interpretations of that rule. For one, we note that, in *Maresca, supra,* footnote 7, Judge Cox recognized that any person subject to the Uniform Code of Military Justice can prefer charges. It is questionable whether the right to prefer charges can be denied by refusal to administer an oath to a would-be accuser, or conditioned on official investigation and legal review before perfecting preferral. While it is true that frivolous or vexatious charges can be readily disposed of, we are concerned that an overly broad application of *Maresca* could have grave and unwarranted consequences if serious, legitimate charges are preferred that have not been investigated or subjected to legal review. It may be that the redrafting of the original charges and referral of revised charges to trial constitutes dismissal of the original charges in the context of RCM 707(b)(2), thereby restarting the speedy trial clock. However, such an interpretation could lead to using this device solely to defeat the purposes of the rule, presumably what appellant believes was done in this case, considering his assertions.

In view of the myriad problems, R.C.M. 707 poses, especially for the sea services, reconsideration of that rule may be warranted. In this regard, Judge Cox noted in *Marseca* that:

[T]he 120–day rule is not a court-made rule. Rather, it was adopted in the Manual for Court–Martial, United States, 1984, and was "intended to protect the speedy-trial rights under the Sixth Amendment and Article 10 [UCMJ, 10 USC § 810,] and to encourage protection of command and societal interests in prompt administration of justice." Footnote 4, 28 MJ 331.

The practical problems disclosed by recent cases suggest that RCM 707 may not be achieving these worthy objectives. In fact, RCM 707 may have created more problems than it has solved. Upon re-examination, consideration might be given to modifying the rule to require action on preferred charges by a competent authority, in contemplation of trial, as the triggering event for commencement of the speedy trial clock rather than the non-discretionary act of informing the accused of preferred

---

1. We note that, if the Group Commander continued to be the "immediate commander" of the accused, his action also fully comported with the requirements of RCM 308(b).

charges "as soon as practicable". Consideration might also be given to abandoning a fixed time such as 120 days. Moreover, separate standards may be appropriate in instances involving pre-trial restraint or cases where an accused has demanded speedy trial. Also, provision could be made to recognize the role of the investigation required by Article 32, UCMJ, for cases being referred to a General Court–Martial. At present, the time taken to conduct these proceedings, which in some instances amount to mini-trials and are frequently utilized as useful discovery mechanisms for an accused, is generally chargeable to the government, unless the terms of certain stated exceptions are met. It is perplexing, indeed, that the 120–day rule starts before rather than after completion of the Article 32 investigation, since the Article 32 investigation has been equated with the civilian grand jury proceeding. Under civilian rules, the speedy trial clock starts with indictment, the end result of the grand jury proceeding. A reconsideration of RCM 707 by executive authority could deal with all of these concerns. Meanwhile, we must continue to apply the rule as interpreted by our highest court.

Having done just that, and finding the accused's right to a speedy trial not violated, we now determine the findings and sentence to be correct in law and fact and on the basis of the whole record should be approved. The findings of guilty and sentence, as approved and partially suspended below, are affirmed.

Judges BRIDGMAN and JOSEPHSON concur.